# The Equitable Life Assurance Society of the United States v. Meuth, et al.

(Decided October 31, 1911.)

## Appeal from Henderson Circuit Court.

1. Contract—Alteration—Defense—Special Plea.—The defense that a writing has been altered after its delivery by the insertion of words in it, must be specially pleaded; it cannot be shown under a denial as to the effect of the writing.

2. Probable Alteration.—There being no issue as to the genuineness of the writing, the court cannot consider evidence merely going to show that the writing was probably altered.

3. Tontine Policy—Paid Up—Surplus.—Under a tontine policy providing that at the end of the tontine period, the insured would be entitled to a paid up policy and a surplus of $544 in cash, the company cannot show that the surplus was $171, and thus defeat a recovery for $544.

HUMPHREY & HUMPHREY, DORSEY & STANLEY for appellant.

CLAY & CLAY for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Affirming.

The Equitable Life Assurance Society issued to Willie A. Meuth the following policy:

"The Equitable Life Assurance Society of New York —In consideration of the written and printed application for this policy, which is hereby made a part of this contract, and of the payment in advance of thirty dollars and fifty cents, and of the annual payment of thirty dollars and fifty cents, to be made thereafter, at the office of the Society in the city of New York on or before the twenty-third day of October in every year (provided that when premiums for twenty full years shall have been duly paid to said Society, no further premiums will be required), does promise to pay to Willie A. Meuth, her executors, administrators or assigns, at the office of the Society in the city of New York, one thousand dollars; upon satisfactory proofs of the death of her husband, Simon Meuth of Near Corydon in the county of Henderson; State of Kentucky.

"New York, the twenty-fifth day of October, 1890.

"H. B. HYDE, President.

"J. B. SUNNG, Registrar."

On the back of the policy are these words:

"List of privileges, the details of which will be found in the application * * * a choice of six methods of settlement upon the completion of the tontine period on the 23rd of October, *twenty-third day of October nineteen hundred and ten,* namely, I, the surrender of the policy for its full value consisting of the entire reserve amounting to $456 (*four hundred and fifty-six dollars*), together with the surplus then apportioned by the Society $544, either in (1) cash, $1,000 (2) paid up assurance $2,000, (3) a life annuity; or, II, The continuance of the policy and the withdrawal of the accumulated surplus, either in (1) cash, $544 (2) Paid up Assurance, $1,000, (3) An Annuity.

"H. B. HYDE, President.

"W. ALEXANDER, Sec'y."

Simon Meuth and Willie Meuth brought this suit against the company on December 23, 1910, alleging that the twenty annual premiums had been paid, and that it was provided by the policy that upon the completion of the tontine period on October 23, 1910, the cash surplus at that time should amount to $544; that they elected to

accept the cash surplus and a paid up policy for $1,000; but that the company refused to pay them the money; they prayed judgment for $544, and that the policy be continued as a paid up policy upon the life of Simon Meuth, payable at his death to Willie A. Meuth. The defendant by its answer denied that it was agreed in the policy that the cash surplus would on October 23, 1910, amount to $544 or any definite sum or that it was stated in the policy that the plaintiffs were to receive any surplus other than that apportioned by the Society on October 23, 1910, and that this was $171.97. It offered to confess judgment for the latter sum. The case was tried before a jury who found for the plaintiffs. The court refused a new trial, and entered judgment on the verdict. The defendant appeals.

In the list of privileges endorsed on the back of the policy the figures $544, $2,000, $544 and $1,000 are all written in pencil. The remainder of the words are printed except those that are printed on the preceding page in italics. Meuth testified on the trial that he received the policy by mail and that when he received it, it was just as it is now. He also testified that it was agreed between him and the agent who took his application that he should have the sums as indicated by the pencil marks on the back of the policy.

The defendant did not plead an alteration or spoliation of the policy; it did not deny the issual of the policy. Its answer put nothing in issue except the effect of the contract. If after a contract is made words are put into it, which were not there when the defendant signed and delivered it, this defense must be especially pleaded. (Newman on Pleadings, Sec. 424b.) It is insisted that the court should not have allowed Meuth to testify to what took place between him and the solicitor before the policy was issued. But we do not deem this material as simply a question of law was involved which was for the court and not for the jury. The construction of a contract is for the court. The pleadings admitted the making of the contract and the contract being in writing, its proper construction was a question of law.

Itt is also insisted that it is incredible that an insurance company making a twenty year contract would use a lead pencil to fill out the amount in the contract which would be paid at the end of twenty years. This may be true the fact would have great weight if a plead-

ing had been filed charging that these figures had been put there after the delivery of the contract by the defendant. But under the pleadings as they stand it is admitted that the defendant signed and delivered the contract as it now is.

When we come to construe the contract the only pur-purpose of the writer in setting down the figures "544" after the words "together with the surplus then appor-tioned by the Society" could have been to indicate that the surplus thus apportioned by the Society should be $544. This is not only the natural meaning of the words but we do not see how any other meaning can be given to them. In like manner the figures "544" after the word "cash" must mean $544 in cash. The grammati-cal construction of the words is that in the second con-tingency the policy holder may continue his policy and withdraw the accumulated surplus either in cash, $544, or have paid up insurance $1,000 or an annuity.

Lastly it is insisted that the contract is one not to be performed in a year and that under our statute a contract which is required by law to be signed, must be subscribed at the end or close of the writing. The policy is signed by the president in his own hand; the name of the president and secretary are printed at the close of the list of privileges endorsed on the back of the policy. When the president signed his name on the face of the policy, with his name printed under what was on the back of the policy he made the whole policy the contract of the company. A printed signature is sufficient to satisfy the statute of frauds where the paper is delivered under cir-cumstances showing an intention to regard the printed name as the person's own. (Brown on Statute of Fraud, Sec. 348-356, 3 Cyc., 275, 29 Am. & Eng. Encyc. of Law, 857, and cases cited.

Judgment affirmed.