METROPOLITAN LIFE INSURANCE COMPANY v. THOMPSON.

4-6664                                      160 S. W. 2d 852

Opinion delivered March 30, 1942.

*Harry Cole Bates* and *Streett & Harrell,* for appellant.

*Surrey E. Gilliam,* for appellee.

McHANEY, J. In 1933, appellant issued to Lion Oil Refining Company of El Dorado, hereinafter referred to as Lion Oil, its Group Insurance Plan Contract, by which it agreed to insure eligible employees of Lion Oil who might make application for insurance thereunder, covering death, total and permanent disability, total temporary disability and dismemberment. On March 15, 1937, Grover Thompson, colored, husband of appellee, being an eligible employee of Lion Oil, made application for insurance coverage under the master policy issued to Lion Oil and a certificate was issued by appellant on June 24, 1937, sent to Lion Oil and by it delivered to

Thompson, who became ill on June 26, 1937, and died on July 13, 1938, without having fully recovered from such illness and without doing any work for Lion Oil after June 26, 1937. His illness was caused or aggravated by inhaling gas fumes while at work in cleaning out a gas tank car. Both the group policy and the certificate provide that there shall be no liability of appellant for total temporary disability, if such disability results from an "occupational" injury or illness. Whether Thompson's disability was the result of an "occupational" illness is not here determined, but for the purpose of this opinion we assume that it was not. No claim was ever made under the total and permanent disability provisions of the group policy and certificate, as they both provided there should be no liability on this account unless the disability for which the claim is made commences after the employee had been continuously insured for a period of one year.

As to death benefits the group policy provides: "The insurance of any employee insured hereunder who shall have ceased to be in the employ of the employer, shall be discontinued as of the date such employee left the employ of the employer.

"Upon receipt by the company of due notice and proof—in writing—of the death of any employee, while insured hereunder, and upon the surrender of the certificate and all certificate riders—if and—issued hereunder to such employee, the company shall pay, subject to the terms hereof, to the beneficiary of record, the amount of life insurance, if any, in force on account of such employee, at the date of his death, according to the formula.

"The company shall, upon cessation of insurance hereunder on any employee because of termination of employment, be released from any liability on account of such employee unless and until an individual policy is issued in accordance with the provisions of this section."

The certificate issued to Grover Thompson contained the following provisions: "If death occur while

the employee is in the employ of the employer and while the group policy is in force, the amount of life insurance, if any, then in force thereunder on said employee, shall be paid to Essie Thompson, beneficiary.

"In case of the termination of the employment of the employee, for any reason whatsoever, all of his said insurance shall immediately cease, but the employee shall be entitled to have issued to him by the company, without evidence of insurability, and upon application made to the company within thirty-one days after such termination, and upon the payment of the premium applicable to the class of risks to which he belongs and to the form and amount of the policy at his then-attained age (nearest birthday), a policy of life insurance in any one of the forms customarily issued by the company, except term insurance, in an amount not exceeding the amount of his life insurance under the group policy at the time of such termination."

On April 9, 1938, Lion Oil furnished appellant, on a form provided by it, written notice of the termination of Thompson's employment, together with that of seven other employees and requested cancellation of Thompson's insurance as of February 1, 1938. Appellant complied with said notice and request, canceled Thompson's insurance as of said date, and refunded to Lion Oil all premiums it had paid on that account between February 1 and April 9, 1938. Lion Oil paid all premiums to appellant for all its employees, a portion thereof being deducted from their wages, but during the illness of Thompson, it paid all his premiums up to April 9, 1938, and paid him about $25 monthly from August, 1937, to March, 1938, both inclusive, as advances, and charged his part of the premiums and all the advances to his account, on the theory he would recover and return to work. No premiums were paid after April 9, 1938, and no advances were made him and his name was dropped as an employee. No notice was given him that Lion Oil had directed appellant to cancel the policy and none was given that he was no longer an employee except he may have known it from the fact that no further advances were made to him after March, 1938, and from

the fact he employed an attorney about this time to sue Lion Oil for damages for personal injuries causing his illness. No premiums were paid appellant after the written notice given it as aforesaid and it refunded the premiums paid between February 1, and April 9, to Lion Oil, as requested by it. Appellant had no dealings with Thompson direct, but all business was handled through Lion Oil.

After Thompson's death, appellee, as beneficiary named in the certificate, made proof of loss, forwarded same to appellant and demanded the death benefits named in the certificate. Appellant refused to pay and appellee brought this action to recover same. In addition to allegations that Grover Thompson was insured in the sum of $1,500 in said certificate, that he had died and that she was the named beneficiary, the complaint alleged a liability of appellant to her husband, under the total temporary disability provision of $10 per week for 13 weeks, or a total of $130; that at the time of his death he was in the employ of Lion Oil; that he complied with all provisions as to notice and making proof of disability; that the Lion Oil paid all premiums on his contract until his death; that appellant had $130 in its hands due him out of which to pay the premiums; that it was its duty to apply a sufficient sum of the money due him to the payment of the monthly premiums to prevent a forfeiture; and that it could not forfeit so long. as it had more money in its hands belonging to him than was necessary to pay the premiums. Appellant's answer will be treated as a general denial. Trial resulted in a verdict and judgment for the amount sued for, penalty and attorney's fee. This appeal followed.

After both parties had briefed the case in this court, counsel for appellee filed a supplemental brief stating that it has come to his attention since filing his brief "that the motion for new trial in this case was not either filed within time nor presented in time as required by law, and for that reason the errors assigned by counsel in their brief cannot be considered by this court on appeal." We cannot agree. Verdict was rendered May 14, 1941, and on the same day appellant, in open court,

made application for a new trial, and the court made and entered an order giving it until June 30, 1941, to file motion for new trial. The motion was filed on June 12, well within the time allowed, and on the same day, court still being in session, the motion was presented to the court and by it taken under advisement until July 1, 1941, when it was overruled, the court still being in session. Appellee relies on the recent case of *C. R. I. & P. Ry. Co.* v. *McCoy, ante,* p. 596, 157 S. W. 2d 761, but this case is not in point, because here the term did not lapse. There it was held that a motion for a new trial which was not presented during the term nor within 30 days after the date of the date of the verdict after the lapse of the term was not presented within the time limited by law, Pope's Digest, § 1539. Here oral motion for new trial was made May 19 and the court entered an order giving appellant until June 30 to file written motion, which was filed and presented June 12, taken under advisement and overruled July 1, 1941, all during term time. We think the court had the power to extend the time for filing the motion. We have so held. In *Marshall Bank* v. *Turney,* 105 Ark. 116, 150 S. W. 693, Mr. Chief Justice McCulloch used this language on p. 119: "The record shows that the motion for new trial was filed by express permission of the court; but, even if this were not so, the presumption would be indulged, in the absence of a showing to the contrary, that the court granted special permission for the motion for new trial to be filed out of time." Citing *Fordyce* v. *Hardin,* 54 Ark. 554, 16 S. W. 576. We think the bill of exceptions is, therefore, properly before this court.

On the merits of the case, it is undisputed that, on April 9, 1938, the Lion Oil notified appellant that Thompson was no longer in its employ and directed that the certificate as to him be canceled as of February 1, 1938. It is also undisputed that appellant complied with this request and refunded premium payments made subsequent to February 1, and that thereafter no premiums were paid. It was made the duty of Lion Oil to furnish appellant the names of its employees eligible for insurance coverage and the names of those employees who

ceased to be such. The reason for this was that the in-
surance on an employee ceased immediately when he
ceased to be an employee of Lion Oil, and the premium
payment made monthly by it was determined by the
number of its employees covered. Appellant had no
dealings with the employees and did not know them,
except as certificate holders whose names were certified
to it by Lion Oil as being eligible and who, from month
to month varied when new names were added and others
were discontinued on account of nonemployment. It col-
lected no premiums from them and had no other dealings
with them, except in the payment of claims arising under
the contract, and these claims were handled through
Lion Oil.

We, therefore, are of the opinion that it had the
right to rely and act upon the report of Lion Oil as to
whether any employee had ceased to be employed, and
to cancel his certificate on the ground of nonemployment,
in the absence of collusion or fraud between it and Lion
Oil. Nor was there any duty resting upon appellant to
notify Thompson his certificate had been canceled.
Neither the group policy nor the certificate require it to
do so. There is a provision for the right of the employee
to convert his certificate to ordinary life insurance when
he ceases to be an employee without re-examination, and
it is contended that this valuable right would be lost to
him, if he is not notified of his discharge or of the can-
cellation of his certificate. Ordinarily an employee is
bound to know if he is discharged, or if he ceases to be
an employee, but here he was continued as an employee
for about ten months after becoming disabled and until
he employed a lawer to bring a damage suit against his
employer. We think he should then have surmised that
his status as an employee was likely to be terminated.
But, assuming that Lion Oil wrongfully notified appel-
lant that Thompson was no longer in its employ and
asked cancellation as to him, and that it should have
notified him of its action, still appellant had the right to
rely on the information it received, in the absence of
fraud or collusion between it and Lion Oil, and cannot
be held to account for the alleged wrongful act of the

latter. Our own case of *Aetna Life Ins. Co.* v. *Carroll,* 188 Ark. 154, 65 S. W. 2d 25, supports appellant's contentions. It is generally held that a provision in a policy of group insurance for termination of coverage when employment ceases does not amount to a forfeiture and that the employer is the agent of the employee in furnishing information to insurer regarding the status of employees. *Duval* v. *Metropolitan Life Ins. Co.,* 82 N. H. 543, 136 Atl. 400, 50 A. L. R. 1276; *Chrosniak* v. *Metropolitan Life Ins. Co.,* 121 Misc. 453, 201 N. Y. Supp. 211, affirmed without opinion in 209 App. Div. 852, 204 N. Y. Supp. 898; *Joe Kowalski, Admr.* v. *Aetna Life Ins. Co.,* 266 Mass. 255, 165 N. E. 476, 63 A. L. R. 1030; *Magee* v. *Equitable Life Assur. Soc.,* 62 N. D. 614, 244 N. W. 518, 85 A. L. R. 1457. In the Magee case, last cited, it was held, to quote a headnote in A. L. R., "Where such 'terms and conditions' (in the group or master policy) require that the names of those insured in the group life insurance policy be certified to the assurance society by the employer, and premiums for such employee paid monthly, the failure to include such employee in the list insured and to pay premiums upon insurance for him precludes recovery against the assurance society upon the aforesaid certificate." This case also holds that the employer was under no obligation to notify an employee, who had been laid off, that his name was no longer certified on the list of those insured, and that no further premiums were paid for him when the employer ceased to carry insurance for such employee. It was said that the insured employee could not have paid the premiums himself, since he was not discharged and his right to convert his policy and pay the premiums thereon himself did not arise until his discharge. There is a voluminous annotation to this case and we are of the opinion that the holding herein is in accord with the weight of authority, although there are cases to the contrary, notably *Emerick* v. *Conn. Gen. Life Ins. Co.,* 179 Atl. 335, 120 Conn. 60, 105 A. L. R. 413, cited by appellee. Also cited and relied on by her are our cases of *Mo. State Life Ins. Co.* v. *Withers,* 188 Ark. 1130, 69 S. W. 2d 872; *Mo. State Life Ins. Co. v. Foster,* 188 Ark. 1116, 69 S. W. 2d 869; and

*Mo. State Life Ins. Co.* v. *Brown,* 188 Ark. 1136, 69 S. W. 2d 1075, all holding that, where the insurer, under a certificate and group policy, had sufficient funds in its possession belonging to the insured to pay the premiums, it must apply same to the payment of premiums to prevent a forfeiture. Here, however, there was no forfeiture. The premiums were paid by Lion Oil until it directed appellant to cancel the insurance as to Thompson and seven others, which was done. Thereafter, neither Lion Oil nor Thompson could have paid any premiums, because the insurance was canceled. In the three cases just cited there had been no cancellation of the policies, and the facts are wholly different.

Therefore, the court should have directed a verdict for appellant, and, for its refusal to do so, the judgment is reversed, and the cause dismissed.