MARGUERITE A. NICK v. TRAVELERS INSURANCE COMPANY, Appellant.—
No. 39455.—189 S. W. (2d) 532.

Division One, September 4, 1945.

Rehearing Denied, October 1, 1945.

*Clay C. Rogers* and *Mosman, Rogers, Bell & Conrad* for appellant.

378

*Leo A. Spalding* and *Clarence C. Chilcott* for respondent.

380

*Powell B. McHaney, Frank P. Aschemeyer* and *Paul G. Ochterbeck* amici curiae.

382

*Henry I. Eager* amicus curiae; *K. B. Hixson* and *Michaels, Black-mar, Newkirk, Eager & Swanson* of counsel.

.382

BRADLEY, C.—This is an action by the beneficiary named in the certificate issued to an employee covered by a group life insurance policy issued to the employer, the Great Atlantic & Pacific Tea Company. The deceased employee was Joseph A. Nick, Jr. The cause was filed October 3, 1935, and tried February 25, 1943. Plaintiff obtained verdict and judgment for $4312.00, the face amount ($3,000) of the certificate, plus interest. Defendant appealed to the Kansas City Court of Appeals. That court affirmed the judgment, Nick v. Travelers Insurance Co., 185 S. W. (2d) 326, but deemed its opinion in conflict with the opinion of the St. Louis Court of Appeals in Longley v. Prudential Insurance Co., 161 S. W. (2d) 27, and certified the cause to the supreme court.

Plaintiff's husband, Joseph A. Nick, Jr., the deceased employee, was a baker and was employed in Kansas City, Missouri, by the Tea Company. The employer, by Nick's direction, deducted $1.80 per month from his earnings "to apply toward the premium for this insurance." On September 23, 1932, so plaintiff contends, Nick and his employer's superintendent, Chiarelli, had some argument or words about the manner in which he (Nick) threw "some bread in the pan", and on that date Nick was temporarily laid off "until he cooled off." On the other hand, defendant contends that Nick was discharged September 17, 1932. Defendant's records show that the last deduction from Nick's pay to apply on the premium was made September 3, 1932, and that Nick left the Tea Company September 17, 1932. Nick was killed in an automobile accident on October 8, 1932.

The group policy, also called the master policy, contained provisions (a) and (b), as we, for convenience, designate them. These provisions are as follows:

(a) "Employee's individual certificate: The Company (defendant) will issue to the employer for delivery to each employee whose life is insured hereunder an individual certificate setting forth a statement as to the insurance protection to which he is entitled, to whom payable, and containing provisions to the effect that in case of the termination of the employment *for any reason whatsoever* the employee shall be entitled to have issued to him by the Company without further evidence of insurability, and upon application made to the Company within thirty-one days after such termination and upon the payment of the premium applicable to the class of risks to which he belongs and to the form and amount of the policy at his then attained age, a policy of life insurance, in any one of the forms customarily issued by the Company, except term insurance, with permanent total disability benefit equivalent to that provided hereunder, in an amount equal to the amount of the employee's protection under this policy at the time of the termination of his employment."

(b.) "Termination of Insurance: The insurance of any employee covered hereunder *shall end* when his employment with the employer *shall end*, except in a case where at the time of such termination the employee shall be wholly disabled and prevented by bodily injury or disease from engaging in any occupation or employment for wage or profit. In such case the insurance will remain in force as to such employee during the continuance of such disability for the period of three months from the date upon which the employee ceased to work and thereafter during the continuance of such disability and while this policy shall remain in force until the employer shall notify the Company to terminate the insurance as to such employee. Nothing in this paragraph contained shall limit or extend the permanent total disability benefit to which an employee shall become entitled under this policy.

"Temporary lay off or leave of absence for reasons other than physical disability as aforesaid shall not be considered as termination of employment for the purpose of this insurance *unless the employer shall so elect*" (italics ours).

The certificate issued and delivered to Nick contained a conversion provision identical with that in (a), supra, of the group policy, and the certificate also contained the first paragraph of provision (b), supra, with the added provision that the insurance would terminate if the employee should notify the employer "to make no further deductions from his pay to apply toward the premium for this insurance."

The controversy wages on two propositions, both affirmed by plaintiff and both denied by defendant: (1) That Nick's employment was not

terminated, but that he was merely temporarily laid off; and (2) that in view of the fact that $1.80 per month was deducted from Nick's pay to apply on the premium payment, and in view of the conversion provision in both the group policy and the certificate, the insurance could not be lawfully terminated absent notice to Nick.

H. W. Adams was secretary of defendant's group department, home office, and a statement by him was put in evidence by defendant under a stipulation that the statement could be read in evidence as though his deposition had been taken. Adams explained the modus operandi between the defendant and the employer as follows: Defendant furnishes to the employer blank record cards, white and yellow. There is a white and a yellow card for each employee covered by the group policy. The employer enters on both the white and yellow cards of the employee the necessary information about him. The two cards, filled out by the employer, are sent to defendant's home office. The white card is retained, but the yellow card is returned to the employer. From time to time the employer furnishes the defendant any necessary additional information about an insured employee. Adams said:

"When the insurance on the employee is changed or cancelled through the termination of employment, the employer indicates such information on the yellow card and forwards it to the home office of the insurance company. The Company then enters its (such) information on the white card which is the insurance company's record." Adams said that Nick's white card showed that he (Nick) had authorized the employer to deduct from his pay $1.80 a month for premium on his insurance and that the last deduction was made on September 3, 1932; that his "yellow card record kept by the employer was sent (date not given) to the insurance company by the employer containing the information that he (Nick) left the Tea Company and the date of said termination of his employment being set down as September 17, 1932." Adams further said that upon the receipt of the yellow card from the employer containing the information as to termination of Nick's employment the defendant "entered the notations in red ink upon the yellow card and also upon the white card."

Lela Dixon was employed by the Tea Company in September, 1932. She testified that at the direction of Chiarelli, the employer's superintendent, she, concerning Nick, filled out what is termed a "departmental termination notice." This had on it the name *Joe Nick*, address *Labor Temple* date *9-17-32*, position, *baker*, rate *6.16* day (meaning $6.16 per day); reason for termination, *carelessness* (italics ours). The italicized words were in the handwriting of Mrs. Dixon, the others were printed. The card had upon it the signature of Chiarelli, and the initials "F. C. R.", being the initials of F. C. Rose, warehouse superintendent and superior to Chiarelli. Mrs. Dixon said that she filled out this card in the ordinary course of business, but that she

had no independent recollection of it. There is no claim that this termination notice card was given to or mailed to Nick, or that he had any notice concerning it.

The jury found on conflicting evidence that Nick's cessation from work was only a temporary lay off, but even so, the Tea Company's conduct in the premises was equivalent to an election to consider the lay off as a termination of the employment, and the Tea Company notified the defendant to that effect and the defendant terminated the insurance. Hence, the decisive question is: Was Nick entitled to notice that his employment or insurance was terminated?

The Kansas City Court of Appeals so held in the present case, and in Butler v. Equitable Life Assurance Soc., 233 Mo. App. 94, 93 S. W. (2d) 1019, on similar facts, ruled to the same effect. In the Butler case the court said [93 S. W. (2d) 1. c. 1025]:

"After a careful study of the authorities, we conclude that as to such a group policy as is involved in this case, wherein the group policy itself imposes burdens upon the insured employee and provides for a consideration to be paid by the employee for the protection and benefits he secures thereunder, then and in such event, such an insured is entitled to notice of cancellation."

In Poch v. Equitable Life Assur. Soc. of the United States, 343 Pa. 119, 22 Atl. (2d) 590, deduction was made from the insured's pay to apply on premium of the group policy, and the group policy contained a conversion provision. It was held that the insured was entitled to notice of cancellation or termination of his insurance. In ruling that case the Supreme Court of Pennsylvania said [22 Atl. (2d) 1. c. 594]:

"Upon a review of the authorities, and upon reason as well, our conclusion is that, under a group policy like that now before us, the insured employee must be regarded as a party to the insurance contract at least to the extent that the group policy cannot be cancelled or any of its effective provisions eliminated, by either the employer or insurer, except in a manner provided by the policy, without giving such employee notice of the intended cancellation or modification, so that he may timely exercise any conversion privilege which may be available to him under the terms of the policy, or, where such privilege is not given, in order that he may seasonably obtain similar insurance protection on his own account elsewhere; further, that in the absence of notice, an agreement of cancellation or modification like that here entered into between the Association and the Society is, as to such employee, legally ineffective to relieve the insurance company from liability under the original policy."

In Emerick v. Connecticut General Life Ins. Co., 120 Conn. 60, 179 Atl. 335, the insured employee contributed (by deduction from his pay) to payment of the premium on the group policy and the policy contained a conversion provision. Judgment below was for the de-

fendant, but this judgment was reversed with direction to enter judgment for the plaintiff. In ruling the case the court reasoned in this wise [179 Atl., l. c. 338];

"If the employer could terminate the status of an employee, who was at the time temporarily laid off or absent on leave, simply by notifying the company that it had done so, without notice to him, he might very likely lose the benefit of the provision enabling him to take out this independent insurance, because the right to do so is limited to thirty-one days after the termination of employment. We cannot assume that either the company or the employer intended so to jeopardize the apparent right given to the employee. In order to make that right one of assured benefit to the employee, knowledge on his part of the termination of his employment would be necessary."

It will not be necessary to review other cases. The following are similar on the facts to the above cases, and the rulings therein are to the same general effect. Johnson v. Inter-Ocean Casualty Co., 112 W. Va. 396, 164 S. E. 411; Deese v. Traveler's Ins. Co., 204 N. C. 214, 167 S. E. 797; Prudential Ins. Co. v. Ferguson, 51 Ga. App. 341, 180 S. E. 503.

In 29 Am. Jur., Sec. 1382, p. 1033, it is stated that as a general rule a group insurance policy issued to an employer who pays the premium for the employees is subject to cancellation and forfeiture pursuant to provisions therefor in the policy, but this same text goes on to say this: "However, the cancellation of a group life insurance policy, without notice to the employees, by the mutual agreement of the employer and the insurer is ineffective as to an employee insured under the policy, where the policy imposes burdens upon the employee, and requires the payment by him of a consideration for the protection and benefits he secures therefrom."

For support for the rule where the insured employee contributes to premium payment, American Jurisprudence makes reference to the annotation in 105 A. L. R. 430-432. In the present case, both the group policy and the certificate not only required Nick to pay the substantial part, if not all of the premium necessary to carry his insurance, but both the group policy and the certificate carried the conversion provision, as appears, supra.

In Crawford's Group Insurance, p. 94, Sec. 39, it is said: "The interest of the employee in the group policy because of the conversion clause is generally held not to be such as to require that notice be given him before a valid cancellation. The wisdom of this rule may be seriously questioned, especially where the employee contributes to the payment of his premium. Notice should be given so that the employee may seasonably obtain other insurance. It should be noted, however, that frequently the conversion privilege can be exercised only when employment terminates, and not when the insurance is cancelled for other reasons. Group policies perhaps should offer this

privilege whenever an employee's insurance ceases *for any reason whatsoever*" (italics ours). The present policy does this.

Note the first sentence in Crawford's Sec. 39, supra: "The interest of the employee in the group policy because of the conversion clause is generally held not to be such as to require that notice be given him before a valid cancellation." Supporting such statement, these cases are cited: Magee v. Equitable Life Assur. Soc., 62 N. D. 614, 244 N. W. 518, 85 A. L. R. 1457; Chrosniak v. Metropolitan Life Ins. Co., 201 N. Y. S. 211; Thull v. Equitable Life Assur. Soc., 40 Ohio App. 486, 178 N. E. 850; Stoner v. Equitable Life Assur. Soc. (Pa.), 28 Dauphin Co. Rep. 235.

In the Magee case, supra, the group policy contained a conversion provision upon termination of the employment *for any reason whatsoever* as in the present case. In that case is this: "If not discharged, he (the insured employee) could not convert his certificate into this other form of life insurance, and, if discharged, he knew it, and failed to take advantage of this right." In the present case the employer *elected* (by conduct) to treat the temporary lay off as termination of the employment, and Nick *did not know* of such election, and had no notice of it. And still a more important difference between the Magee case and the present case is that in the Magee case the employee made no contribution to premium payment.

In the Chrosniak case, supra, the group policy contained a conversion provision and the insured employees contributed half of the premium payment. The policy provided that the insurance of an employee automatically terminated upon "termination of active employment." The insured employee went on a strike, and that was held to be a termination of active employment, and that the insured employee was bound to so know. In the Thull case, supra, there was a deduction from the insured employee's pay to apply on the premium, and the policy contained a conversion provision. Also, the policy provided that the employees were insured for the term of the policy or such part thereof "as they shall respectively remain in the employment of the employer." The insured employee was only temporarily laid off, not discharged, but it was held that, under the policy, there was no difference, so far as terminating the insurance while off, between a temporary lay off and a discharge. In the Stoner case, supra, the group policy contained a conversion provision, but the insured employee made no contribution to payment of premium. Also, the plant of the employer at which the insured employee worked was shut down, and the insured employee died while the plant was shut down. It was held, under the policy, that one who was paid on an hourly basis (insured was) could not be said to be in the employment" of the employer so as to keep the policy alive while the plant was shut down.

The following cases are cited to support the contention that the insured employee in the present case was not entitled to notice. Doty v. Am. Nat. Ins. Co., 350 Mo. 192, 165 S. W. (2d) 862; Williams v. Sun Life Assur. Co., 235 Mo. App. 741, 148 S. W. (2d) 112; White v. Prudential Life Ins. Co., 235 Mo. App. 156, 127 S. W. (2d) 98; Crawford v. Met. Life Ins. Co. (Mo. App.), 167 S. W. (2d) 915; Longley v. Prudential Life Ins. Co. (Mo. App.), 161 S. W. (2d) 27 (referred to, supra, as the case deemed in conflict with the court of appeals opinion in the present case); Miller v. Travelers Ins. Co., 143 Pa. Super. 270, 17 Atl. (2d) 907; Duval v. Met. Life Ins. Co., 82 N. H. 543, 136 Atl. 400; Austin v. Met. Life Ins. Co. (La. App.), 142 So. 337; Stoner v. Equitable Life Assur. Soc., supra; Beecey v. Travelers Ins. Co., 267 Mass. 135, 166 N. E. 571; Szymanski v. John Hancock Life Ins. Co., 304 Mich. 483, 8 N. W. (2d) 146; Davis v. Met. Life Ins. Co., 161 Tenn. 655, 32 S. W. (2d) 1034; Metropolitan Life Ins. Co. v. Thompson, 203 Ark. 1103, 160 S. W. (2d) 852; Curd v. Travelers Ins. Co., 51 Ga. App. 306, 180 S. E. 249; Boseman v. Connecticut General Life Ins. Co., 301 U. S. 196, 57 S. Ct. 686, 81 L. Ed. 1036; Berry v. Travelers Ins. Co., 64 Ga. App. 727, 14 S. W. (2d) 196.

The Doty, Williams, White, Crawford, Longley, Duval, Austin, Stoner, Davis and Bosman cases, supra, do not involve such question on notice as we have here. In the Miller case, supra, reasonable notice was given to the insured employee. In the Beecey case, supra, the group policy contained a conversion provision, but the insured employee made no contribution to premium payment and a statute was of some importance, it seems, in reaching the conclusion that he was not entitled to notice of the termination of his insurance. In the Szymanski case, supra, the insured employee contributed to payment of premium, but the group policy did not contain such a conversion provision as in the present policy. It did, however, contain a provision whereby the employee, upon termination of his employment, had the right, upon application, and without examination, "to continue the insurance" upon payment of the necessary premium. Also, in the Szymanski case the insured employee's employment was terminated because of a reduction "in the force". However, on the day following the termination of the employment, the employer had an interview with the employee for the purpose of placing him "in some other department if there was an opening."

In Metropolitan Life Ins. Co. v. Thompson, supra, the policy contained a conversion provision and deductions were made from the employee's pay to apply on payment of premium. In that case the insured employee made application March 15, 1937, for insurance under the group policy. A certificate was issued to him on June 24, 1937. He became ill from inhaling gas June 26, 1937, did not recover, and died July 13, 1938, without doing any more work. Although

the employee was not at work, the employer paid the full premium for the employee up to April 9, 1938, and advanced to the employee $25.00 per month from August, 1937, to March 1, 1938, both inclusive, and charged to the employee his part of the premium and the advancements "on the theory that he would recover and return to work." But no premium for him was paid after April 9, 1938, and no advancements were made thereafter. "His name was dropped as an employee", and the employer notified the insurer to cancel his insurance as of February 1, 1938. This was done, and the premiums that were paid for the employee subsequent to February 1, were returned to the employer. No notice, however, was given the insured employee that his insurance was cancelled "except he may have known it from the fact that no further advances were made to him after March, 1938, and from the fact he employed an attorney about this time to sue Lion Oil (the employer) for damages for personal injuries causing his illness." In Metropolitan Life Ins. Co. v. Thompson, the court said [160 S. W. (2d) 1. c. 855] :

"There is a provision for the right of the employee to convert his certificate to ordinary life insurance when he ceases to be an employee without re-examination, and it is contended that this valuable right would be lost to him, if he is not notified of his discharge or of the cancellation of his certificate. Ordinarily an employee is bound to know if he is discharged, or if he ceases to be an employee, but here he was continued as an employee for about ten months after becoming disabled and until he employed a lawyer to bring a damage suit against his employer. We think he should then have surmised that his status as an employee was likely to be terminated."

It would seem that the employee in what we may term the Thompson case *knew* that his employment was terminated and his insurance also, but the court went on to hold that he was not entitled to notice. In this connection is the following [160 S. W. (2d) 1. c. 855] :

"It is generally held that a provision in a policy of group insurance for termination of coverage when employment ceases does not amount to a forfeiture and that the employer is the agent of the employee in furnishing information to insurer regarding the status of employees", citing Duval v. Metropolitan Life Ins. Co., supra; Chrosniak v. Met. Life Ins. Co., 121 Misc. 453, 201 N. Y. S. 211; Joe Kowalski, Admr., v. Aetna Life Ins. Co., 266 Mass. 255, 165 N. E. 476, 63 A. L. R. 1030; Magee v. Equitable Life Assur. Soc., supra. We do not think that these cases rule the point on the question of notice involved in the Thompson case.

In the Curd case, supra, the insured employee made no contribution to premium payment and the policy did not contain a conversion provision.

Counsel, including those as amici curiae, have filed able briefs in the present case. We have carefully examined all these, but we are

constrained to say that in view of the conversion provision and the fact that the insured employee contributed to premium payment, the better reason ▇▇ requires the ruling that the insured employee was entitled to notice from his employer that his employment was terminated before his insurance could be terminated during the period he was only temporarily laid off and not discharged. Otherwise the conversion provision would be of uncertain value.

We think the Kansas City Court of Appeals, in the able opinion by Judge Dew, correctly ruled the present case and we are not convinced that the result there reached should be overruled. The judgment should be affirmed, and it is so ordered. *Dalton* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.