DOLES *v.* METROPOLITAN LIFE INSURANCE COMPANY.

4-8644                                           216 S. W. 2d 382

Opinion delivered November 29, 1948.

Rehearing denied January 31, 1949.

216

*P. L. Smith,* for appellant.

*Moore, Burrow, Chowning & Mitchell,* for appellee.

ED. F. McFADDIN, Justice. Appellant instituted action against appellee to recover on an isurance certificate. At the conclusion of all of the evidence the Circuit Court directed a verdict for the appellee; and this appeal challenges the correctness of the trial court's action. On appeal against a directed verdict, we view the evidence in the light most favorable to the appellant. See *Garner* v. *Missouri Pacific Railroad Co.,* 210 Ark. 214, 195 S. W. 2d 39, and see other cases collected in West's Arkansas Digest, "Appeal and Error," § 927(7).

Ruth D. Wilson was employed by the Union Carbide & Carbon Company (hereinafter called "Carbide Company") at its plant in Texas City, Texas. Her employment commenced on June 4, 1943. Since 1940, the Carbide Company has carried a group policy of insurance with the appellee, Metropolitan Life Insurance Company, for the benefit of those employees of the Carbide Company who desire such insurance, the individual employee so covered paying part of the premiums, and the Carbide Company paying the remaining portion of such premiums. The employee's payment is withheld from the wages, and remitted by the Carbide Company to the Insurance Company. In keeping with such plan, the appellee, Insurance Company, issued to Ruth D. Wilson—upon her request—a certificate dated September 4, 1943, which read:

". . . under and subject to the Terms and Conditions of its Group Life Policy No. 3379-G Ruth D. Wilson, an employee of Union Carbide and Carbon Corporation or a subsidiary or affiliated company (herein called the Employer), is insured for two thousand dollars.

"If death occur while the Employee is in the employ of the Employer and while said Group Life Policy is in force, the amount of insurance, if any, then in force thereunder on said Employee, shall be paid to Mary V. Doles, Beneficiary.

"In case of the termination of the employment of the Employee for any reason whatsoever, all of his said insurance shall immediately cease, but the Employee shall be entitled to have issued to him by the Company, without evidence of insurability, and upon application made to the Company within thirty-one days after such termination, and upon payment of the premium applicable to the class of risk to which he belongs and to the form and amount of the Policy at his then-attained age (nearest birthday), a Policy of Life Insurance, in any one of the forms customarily issued by the Company, expect Term insurance, in an amount equal to the amount of his protection under the said Group Life Policy at the time of such termination."

On October 1, 1943, the amount of the foregoing certificate was increased by endorsement from two thousand dollars to twenty-five hundred dollars. The total of eighty cents per week was the amount of the premium due by Ruth D. Wilson, and this amount was withheld from her pay checks and remitted to the Insurance Company. On October 30, 1943, in a manner to be hereinafter discussed, Ruth D. Wilson ceased to work for the Carbide Company. She died on March 3, 1944; and on April 30, 1948, this present action was instituted by appellant, Mary V. Doles (mother of Ruth D. Wilson), seeking to recover the twenty-five hundred dollars claimed on the foregoing insurance certificate. The complaint alleged that the policy was in force at the time of the death of Ruth D. Wilson.

These are the issues presented in the lower court and argued here:

(1) When did Ruth D. Wilson cease to be employed by the Carbide Company?

(2) Did she make application for any other policy within 31 days after she ceased to be so employed?

(3) If employment had terminated, and no application had been made for another insurance policy, then in what way could it be claimed that the group policy was in force on March 3, 1944:

We proceed to consider these issues:

I. *Termination of Employment.* The uncontradicted evidence shows that on October 30, 1943, the Carbide Company terminated its employment of Ruth D. Wilson. Plaintiff's witness, Ethel M. Dennis, testified of Ruth D. Wilson's termination of employment with the Carbide Company:

"She was laid off, I believe it was on October 30, 1943, . . ."

Plaintiff's witness, H. L. Garland, testified:

"Q. Do you know whether Ruth D. Wilson worked any place after she quit working for the Carbide & Carbon Chemicals Corporation on October 30, 1943?

"A. I saw her serving at a cafe. I do not know whether she was employed there or not."

The plaintiff testified on direct examination:

"Q. Now, Mrs. Doles, do you know why Ruth D. Wilson was not on duty at the Carbide & Chemical Corporation in the period of time from October 30, 1943, to the date of her death?

"A. She was not able."

The defendant offered the testimony of the head of the shipping department of the Carbide Company to show: that the employment of Ruth D. Wilson was terminated on October 30, 1943, because of a reduction in the number of employees; that the Carbide Company's records so reflected; and that on October 30, 1943, Ruth D. Wilson signed a statement to the War Manpower Commission of the U. S. Employment Service showing that she was available for other employment. It is immaterial to this case whether the Carbide Company dispensed with Ruth D. Wilson's services because of her physical condition or because of a reduction in the number of employees, because this is an action on the group certificate previously copied, and that certificate states " . . . in case of termination of the employment of the employee *for any reason whatever,* all of said insurance shall immediately cease, . . . " (italics our own). In the absence of any fraud or overreaching —and none is alleged or shown here—then the clear language of the policy governs the rights of the parties. In short, all of the evidence shows that Ruth D. Wilson's employment with the Carbide Company was terminated on October 30, 1943, and that she was not in its employ on March 3, 1944, the date of her death.

II. *Application for Other Insurance.* The certificate sued on, and heretofore copied, provided that in case of the termination of employment, "the employee shall be entitled to have issued to him by the company . . . *upon application made to the company* within thirty-one days after such termination . . . a policy of life insurance in any one of the forms customarily issued by the company . . . " (italics supplied). There

is no evidence that Ruth D. Wilson ever made application for further insurance under the above provision. There was introduced in evidence, however, a letter dated November 23, 1943, addressed to Ruth D. Wilson, and reading:

"Dear Mrs. Wilson:

"We are enclosing herewith rider to be attached to your Group Policy issued by the Metropolitan Life Insurance Company. This rider certifies that effective October 1, 1943, your Life Insurance Policy was increased to $2500.00, . . .

"Trusting this finds you in the best of health, and with kindest regards, I am

"Yours very truly,

"Carbide & Carbon Chemicals Corp.

"/s/ R. H. Mariana (htk)

"Industrial Relations and Employment."

Plaintiff claimed that this letter, dated November 23, 1943, showed that the group policy was in force on that date. But this letter merely enclosed the endorsement previously mentioned which had increased the amount of the certificate from two thousand dollars to twenty-five hundred dollars. The letter was written within the thirty-one day period after October 30, 1943, within which time Ruth D. Wilson could have converted her group insurance to some form of permanent insurance if she had made application therefor. This letter and the endorsement enclosed with it afford no evidence that the coverage of the group policy was extended past the date of the termination of her employment, being October 30, 1943, as previously shown. Furthermore, this letter does not tend to show that Ruth D. Wilson ever converted her group insurance into another form of insurance.

III. *Other Claims of the Plaintiff.* Finally, the plaintiff claimed below—and claims here—that the master group policy, on which Ruth D. Wilson's certificate

was issued, provided that the Carbide Company would remit to the Insurance Company, at *intervals of six months,* the premiums withheld from the wages of the employees; and from this it was argued by the plaintiff that Ruth D. Wilson's insurance necessarily continued until the next date of remittance by the Carbide Company to the Insurance Company. This argument is without merit. The certificate sued on definitely states that the insurance coverage ceases on "the termination of the employment of the employee for any reason whatsoever." The time when the Carbide Company was required or permitted to remit to the Insurance Company could not extend the plain language of the certificate here sued on. It was shown by competent evidence that the Carbide Company promptly notified the Insurance Company of the termination of Ruth D. Wilson's employment on October 30, 1943, and that her group policy was cancelled as of that date, and that no request was ever made by anyone to the Insurance Company to effectuate insurance by any type of policy after October 30, 1943. Citation of authorities is unnecessary because the questions presented here are factual, and we have viewed the evidence in the light most favorable to the appellant; but we do mention *Metropolitan Life Ins. Co.* v. *Thompson,* 203 Ark. 1103, 160 S. W. 2d 852, as indicating our holding on some phases of a group insurance policy similar to the one here.

The judgment of the Circuit Court is in all things affirmed.