## INSURANCE COMPANY OF NORTH AMERICA
### v. BETTY S. LEMON

5-5780                                      477 S.W. 2d 187

Opinion delivered March 6, 1972

*Putman, Davis & Bassett,* for appellant.

*Fitton, Meadows & Adams,* for appellee.

CONLEY BYRD, Justice. The issue on this appeal is whether the decedent, John Floyd Lemon, was covered by an employer's group insurance policy issued by appellant Insurance Company of North America to Morrison-Knudsen Company, Inc. The trial court held that the decedent was covered by the policy and entered judgment for the face amount of the policy, the statutory penalty and attorney's fee. For reversal appellant contends:

"I.  The trial judge erred in holding that the decedent, John Floyd Lemon, was insured under the master group policy issued by the appellant to his employer, Morrison-Knudsen, Inc.

II. Even if the decedent was eligible for insurance at the time of his death, there can still be no recovery against appellant under the master group policy."

The policy provision in question provides that "with respect to applications received after policy effective date, individual insurance shall begin on the first day of the month coinciding with or immediately following three months of service."

The following facts are stipulated:

1. The master policy was issued July 1, 1963;

2. Decedent worked for Morrison-Knudson Company from March 21, 1961 to April 12, 1961, from March 3, 1962 to July 31, 1962, and from December 27, 1969, to January 23, 1970, when he was killed by a landslide;

3. Decedent made written application for insurance to Morrison-Knudsen Company on or about December 1, 1969;

4. Decedent's net earnings from December 27, 1969, to January 23, 1970, in the amount of $1,015.01 were paid in two installments, the first being on February 2, 1970, and the last on February 23, 1970;

5. Morrison-Knudsen Company did not withhold the premiums from decedent's wages nor notify appellant that decedent was an insured.

6. Appellant in conjunction with Morrison-Knudson Company designed a pamphlet entitled "Voluntary Personal Accident Insurance" that was distributed to the employees of Morrison-Knudsen Company.

The portion of the pamphlet entitled "Voluntary

Personal Accident Insurance," that was abstracted provides:

"A NEW SOLUTION

Now, through this program of protection, eligible employees can provide for their family's future security easily, quickly—TODAY!

You may select the amount of accidental death benefit (principal sum) you want.

You will become insured regardless of your health history.

You can pay the low premium charges (based as they are on wholesale purchases) through easy payroll deductions. . . .

"YOUR APPLICATION

. . . Just complete the application (s) (ink or typewriter, please) and return it to your Local Office Manager."

Coleen Krall, an employee of Morrison-Knudsen, testified that her job was to run an accounting machine and to handle two insurance policies. She processed decedent's application when it was received. At first, she thought decedent was a "rehire" (*i. e.,* an employee moving from one job to another within 30 days) and because of that belief she made the notation on the application showing the effective date to be 1-1-70. After she received decedent's records and found that decedent had not worked any time within the three months, she notified the job at Bougainville, and did not deduct insurance premiums nor list decedent as an insured with appellant. On direct examination the following occurred:

"Q. Now, if you would, in your own words so we can all understand, explain to the Court on a daily basis how you go about processing these

applications or group insurance or for personal accident insurance that comes in from the employees and comes over your desk, what do you do?

A. I receive their application cards and we check their employment record, if they are available, and then I notify the job when to start deducting out of their checks.

Q. When they will be effective, is this your responsibility?

A. That is my responsibility.

Q. In January of 1970 were you generally familiar with any requirement of the Insurance Company of North America's personal accident policies regarding the length of service?

A. They had to be employed consecutively three months.

MR. ADAMS: I am going to object at this point to her interpretation of this policy, that is one of the things that this Court has to do in this case is interpret this policy.

THE COURT: I didn't understand him to ask the provisions of the policy. I understood the question to be 'what was the policy of the Company.'

MR. BASSETT: Yes, that is what I asked. I don't know who else could say what the policy of the Company was."

Another portion of the policy provided:

"4-Premiums will be paid MONTHLY and shall be due and payable on the following premium due dates: 1st of each Month.

6-The Organization shall submit to the Company together with the application premium therefor (a) An initial listing of eligible persons covered at the effective date of the policy (b) At monthly intervals thereafter, a listing of eligible persons added for coverage, and Insureds whose coverage terminated."

Under the term "Additional Provisions" the policy also provided:

"Clerical Error:   Clerical error by the Organization shall not invalidate insurance which would otherwise have been effective nor extend insurance which would otherwise have terminated under the terms and provisions of the Policy."

POINT I.   Appellant contends that under the policy language the three months service requirement must be satisfied after the application is received after the policy's effective date. In oral argument it was also suggested that the policy requires three months consecutive service. We cannot agree with either contention. The law is that in the construction of insurance contracts, the policy must be construed most strongly against the insurer and in favor of the insured. Also that when the facts are undisputed, the construction is a question of law for the court, *Wright v. Aetna Life Ins. Co.*, 10 F. 2d 281, 46 ALR 225 (1926); *Equitable Life Assurance Society v. Meuth*, 145 Ky. 160, 140 S. W. 157 (1911); and *Wendorff v. Missouri State Life Ins. Co.*, 318 Mo. 363, 1 S. W. 2d 99, 57 ALR 615 (1927).

The section of the policy here in question provides:

"2-Persons eligible to become insured under this policy shall be all those described below, including any who become eligible during the term of the policy. Persons insured shall be those eligible persons for whom written application for inclusion under the

policy shall have been made. With respect to applications received on or before policy effective date, individual insurance begins on policy effective date. *With respect to applications received after policy effective date, individual insurance shall begin on the first day of the month coinciding with or immediately following three months of service.* Eligibility shall cease automatically upon attainment of age 70 and coverage for any such Insured shall terminate on the renewal date next following the attainment of such age. Coverage of any Insured who ceases to be an eligible person as described below, for any reason other than age, shall terminate on the last day of the month in which eligibility ceases." (Emphasis ours).

Nothing in the foregoing language requires or makes it mandatory that the three months service be consecutive, immediately precede the date of the application or that the three months must accrue after the application. Thus when we construe the policy language most strongly in favor of the insured and against the insurer, there is nothing to prevent the cumulation of different work periods to arrive at three months service. Neither is there anything in the policy that requires the three months service to be accumulated after the effective date of the policy. Actually the policy on its effective date only insured those employees who had made prior application. We can find nothing in the policy language that would have prevented an employee who made an application two days after the policy date from being covered under the policy on the first of the next succeeding month if he met the three months service requirements. We agree with the trial court that decedent met the three months service requirement.

POINT II. Here appellant contends that even if the decedent met the three months service requirement, there could be no coverage under the terms of the master policy because Morrison-Knudsen did not comply with the policy provision by submitting decedent's name as an additional insured along with the applicable premi-

um. We find no merit in this contention, for under the testimony of Coleen Krall, set out above, there is substantial evidence from which the trial court could have found that she performed only a ministerial duty under directions from appellant with reference to calculation of the three months service requirement. Thus by the very terms of appellant's policy, decedent's coverage would not have been invalidated by such clerical errors.

Appellant also suggests that there is no coverage because it never received the application. The proof is that appellant caused a brochure to be circulated to all employees informing them that the insurance could be easily and quickly acquired by completing the application and returning the same to the local manager. By appellant's own witness, it was testified that decedent had done everything required of him to acquire the coverage. This same witness testified that if he had met the eligibility requirements, she, as the person in charge of issuing the certificates of insurance, would have issued such certificate. We can find no language in the policy as abstracted that requires the application to be returned to appellant. Rather it appears from their brochure and custom of handling the applications that the applications were turned in to the employer and that only the name of the employee and the applicable premium therefor were all that appellant ever expected to receive.

Appellant in support of its contentions, points to our case of *Metropolitan Life Ins. Co.* v. *Thompson,* 203 Ark. 1103, 160 S. W. 2d 852 (1942), where we held that the failure of the employer to include an employee in the monthly list of insured employees to Metropolitan precluded a recovery by the beneficiary. The policy there involved no provision with reference to "clerical errors" and if such provision had been involved, it would not have helped the beneficiary, since the employee was discharged when he brought a tort suit against his employer some months prior to his death.

It has been suggested that Coleen Krall's failure to place insured's name on the monthly list of eligible per-

sons added for coverage was not a clerical error but an error in judgment. Here again appellant is met with the proof from its own witness from which the trial court could have found that she was a clerical employee and that in calculating the "three months service" she was following appellant's requirements that the employee be "employed consecutively three months" rather than exercising any independent judgment of her own.

The fact that we held in *Connecticut General Life Ins. Co.* v. *Speer,* 185 Ark. 615, 48 S. W. 2d 553 (1932), that an employer, under a life insurance policy, is not an agent of the insurance company upon whom service of process could be had, does not mean that an insurance company can erroneously instruct the employer's clerk with reference to computing a "three months service" requirement and then argues that the clerk was exercising a matter of judgment. Here there is evidence that Coleen Krall was a clerk in the employment of Morrison-Knudson who followed appellant's erroneous instructions in computing the three months service requirement from the employer's records. While the employer's records showed that insured had three months prior service, the employer's clerk erroneously computed the time and because of that error failed to certify insured as a person eligible for coverage. Thus the clerk's error in the computing of the employer's record was one caused by appellant's own instructions and falls within the provisions of its policy that "Clerical error by the [Employer] shall not invalidate insurance which would otherwise have been effective. . . ."

Affirmed.

BROWN, FOGLEMAN AND JONES, JJ., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. Assuming, without conceding, that the policy provision defining eligibility for insurance is ambiguous and subject to the construction given it in the majority opinion, I must dissent because I find merit in appellant's second point for reversal. The policy clearly requires that the applica-

tion be received by the insurance company, not the employer, before there was coverage. The application signed by Lemon was addressed to the insurance company. Colleen Krall was an employee of Morrison-Knudsen, not of appellant. Appellant neither received this application nor Lemon's name as one covered under the policy nor any premium.

Under these circumstances, the terms of the policy were not met, and there was no coverage. In *Metropolitan Life Ins. Co.* v. *Thompson*, 203 Ark. 1103, 160 ·S. W. 2d 852, we quoted, with approval, the following A. L. R. headnote to *Magee* v. *Equitable Life Assurance Soc.*, 62 N. D. 614, 244 N. W. 518, 85 A.L.R. 1457 (1932):

Where such "terms and conditions" (in the group or .master policy) require that the names of those insured in the group life insurance policy be certified to the assurance society by the employer, and premiums for such employee paid monthly, the failure to include such employee in the list insured and to pay premiums upon insurance for him precludes recovery against the assurance society upon the aforesaid certificate.

See also, *Hanna* v. *Mt. Vernon Life Ins. Co. of New York*, 260 F. 2d 244 (8th Cir. 1958).

The majority opinion necessarily invokes, without saying so, two inappropriate premises to reach its conclusion. By attempting to classify Colleen Krall's acts as ministerial, the "clerical error" provision is invoked. I submit that hers was no clerical error, if indeed it was an error. It could only have been an error involving judgment, which cannot be a clerical error. The term is defined and illustrated in Black's Law Dictionary, Fourth Edition, p. 319, as follows:

Generally, a mistake in writing or copying. 1 L. Raym. 183; *Los Angeles Shipbuilding & Dry Dock Corporation* v. *Los Angeles County*, 22 Cal. App. 2d

418, 71 P. 2d 282; *Franklin* v. *State,* 240 Ala. 57, 197 So. 58, 59.

It may include error apparent on face of instrument, record, indictment or information, In re Goldberg's Estate, 10 Cal. 2d 709, 76 P. 2d 508, 512; error in respect of matters of record, *Shotwell* v. *State,* 135 Tex. Cr. R. 366, 120 S. W. 2d 97; errors, mistakes, or omissions by clerk, writer, counsel, or judge which are not the result of exercise of judicial function; *Pacific Finance Corporation of California* v. *La Monte,* 64 Idaho 438, 133 P. 2d 921, 922; *Wilson* v. *City of Fergus Falls,* 181 Minn. 329, 232 N. W. 322, 323; failure of clerk to enter order, *Keller* v. *Cleaver,* 67 P. 2d 131, 133, 20 Cal. App. 2d 364; omission in statutory provision, *Craig* v. *State,* 164 S. W. 2d 1007, 1008, 204 Ark. 798; order fixing tax rate below statutory rate. In re Jagnow's Estate, 266 N. Y. S. 785, 788, 148 Misc. 657; placing of case on calendar without notice, *New England Furniture & Carpet Co.* v. *Willcuts,* D. C. Minn., 55 F. 2d 983, 987; purported order incongruous and irrelevant to surrounding recitals, *Carpenter* v. *Pacific Mut. Life Ins. Co. of California,* 14 Cal. 2d 704, 96 P. 2d 796, 799; signature by judge to judgment which does not express judicial desire or intention, *Bastajian* v. *Brown,* 19 Cal. 2d 209, 120 P. 2d 9, 12.

In *Williams* v. *State,* 229 Ark. 42, 313 S. W. 2d 242, we held that the action of a circuit court clerk in failing to insert the recital that two sentences would run consecutively in a penitentiary commitment because the judge's docket notation did not so indicate and the judge was of the erroneous opinion that the two sentences would automatically run consecutively was not clerical error. There is certainly a close parallel between this situation and that. The omission of Lemon's name from any list submitted to appellant was not a clerical error but was a deliberate act based upon a judgment decision by one who was in charge of administering the insurance programs of the employer and not just a clerk or machine operator.

44

The other premise which I consider unsound is the treatment of either Colleen Krall, or Morrison-Knudsen or both as if one or the other or both were appellant's agent. While there is a division of authorities on the question, we have held that they are not. *Connecticut General Life Insurance Co.* v. *Speer,* 185 Ark. 615, 48 S. W. 2d 553.

I would reverse the judgment and dismiss the cause.

I am authorized to state that Mr. Justice Brown joins in this dissent.