NATIONAL LIFE & ACCIDENT INSURANCE COMPANY v. BALLENTINE.

4-3645

Opinion delivered January 7, 1935.

R. S. Wilson, for appellant.
Rains & Rains, for appellee.

SMITH, J. On August 15, 1932, appellant insurance company issued an industrial life insurance policy to Jerry Ballentine, in which his brother, Bill Ballentine, was named as beneficiary. The death benefit provided in the policy was $204, which amount was to be doubled in case of accidental death. Premiums were payable at the rate of 10 cents per week, with a grace period of four

weeks, with the provision that the policy should be void upon a failure to pay any premium when due or within the four weeks of grace.

Suit was brought by the beneficiary, and it was alleged that the insured was accidentally killed on April 2, 1933, and upon the trial from which this appeal comes judgment was recovered for the double indemnity. The reversal of this judgment is asked upon two grounds, (1) that no proof of death was ever submitted to the appellant company as required by the terms of the policy, and (2) that the policy had lapsed on account of nonpayment of the premiums and the period of grace had expired at the time of the death of the insured. Having concluded that the second assignment of error is well taken, we do not consider the first.

There was testimony to the effect that the insured was solicited to take out a policy promising a greater indemnity on which the premium would have been 25 cents per week and on which a payment of 50 cents was made, but, as that policy was never issued, it was agreed with the agent of the company who made the weekly collections that the 50 cents so paid should be applied in payment of five weekly payments of 10 cents each.

Lillian Wallace, a sister of the insured, testified that, while her other brother was the beneficiary, the premiums were paid by her mother, and concerning one of these payments the sister testified as follows: "Q. Do you know how far the policy was paid up to? A. I could not say the date, but in December she (mother) gave a quart of pecan goodies (to the collector). That would have been five weeks. The agent told mother he had a better policy he would like for her to take out on brother. She told brother about it when he came from Arizona. It was 25 cents a week. The agent asked 50 cents down. Brother gave two quarters at that time. This policy didn't go through and mother got on him about it. He said it didn't go through. He said it would go on the other policy."

There was other testimony concerning the payment of premiums with nuts, but it is insisted that even these,

if allowed, were insufficient in number and amount to have kept the policy in force.

The insurance company delivered to the holder of the policy a receipt card upon which it was required that any and all payments of premiums be indorsed. In a printed column appearing on this card there was a calendar showing when each weekly payment would mature. This calendar covered a period of time beginning April 4, 1932, and extending to September 25, 1933. Opposite these dates was another column headed "DATE When received Day Mo." Another column was designed to show "Premium Received, Cents." Another column was headed "Signature of Collector. On first line of each page sign full name, afterwards initials." The purpose of this receipt card was to show the date and the amount of all premiums received. The first premium paid by the insured Ballentine was the one due December 15, 1932. The payments due January 9, 16, 23, and 30, 1933, were shown to have been made 2-10-1933. No subsequent payments were shown by the receipt card, and the last one so shown was made more than eight weeks before the death of the insured.

Even though the testimony be sufficient to support the finding that the payments of premiums that were made with nuts were enough in amount to have kept the policy in force to a date within the grace period, it appears certain that without such payments the policy was not in force on the date of the insured's death. Whether premium payments were made with nuts is a disputed question of fact which has been settled in the beneficiary's favor by the verdict of the jury. But even so, was this a legally sufficient payment of the premiums? That it was not was held in the case of *Hoffman* v. *John Hancock Mutual Life Ins. Co.*, 92 U. S. 161. It was there said by the Supreme Court of the United States: "Agencies are special, general, and universal. Story's Agency, § 21. Within the sphere of the authority conferred, the act of the agent is as binding upon the principal as if it were done by the principal himself. But it is an elementary principle, applicable alike to all kinds of agency, that whatever an agent does can be done only in the way

usual in the line of business in which he is acting. There is an implication to this effect arising from the nature of his employment, and it is as effectual as if it had been expressed in the most formal terms. It is present whenever his authority is called into activity, and prescribes the manner as well as the limits of its exercise. *Upton* v. *Suffolk Co. Mills,* 11 Cush. 586; *Jones* v. *Warner,* 11 Conn. 48; Story's Agency, § 60, and note; 3 Chitt. Law of Com. & Manuf. 199; *U. S.* v. *Babbit,* 1 Black 61; 1 Pars. on Contr., 4th ed., pp. 41, 42.

"Life insurance is a cash business. Its disbursements are all in money, and its receipts must necessarily be in the same medium. This is the universal usage and rule of all such companies."

See also notes to this case appearing in volume 2 of 1932 Supplement to Rose's Notes on United States Reports at page 455. One of the cases there cited as having distinguished that case is that of *New Jersey Ins. Co.* v. *Rowell,* 33 Ga. App. 554, 126 S. E. 893. This opinion by Division No. 1 of the Court of Appeals of Georgia, reviews the Hoffman case, *supra,* and others to the same effect, after which it was said: "In the case we are now considering the policy was regularly issued and delivered. The insured paid to the local agent the full premium, and at the time of the fire the policy was in the hands of the insured. When these things are shown by competent evidence, a *prima facie* case of liability is proved. Until there is evidence to the contrary, it will be presumed that the agent kept faith with his principal and sent to it the premium, less commissions and expenses. Surely where an insurance policy is regularly issued, and the company receives the full amount of the premium less commissions, the policy will not be rendered invalid and void from the simple fact that the local agent accepted a part of the premium in goods instead of in cash. See *Metropolitan Life Ins. Co.* v. *Thompson,* 20 Ga. App. 706 (3), 93 S. E. 299."

In that case it was insisted that the policy sued upon was void because "a part of the premium was paid by the exchange of or credit for goods, which constituted a fraud upon the company." Only a single premium was

there involved, and the possession of the policy at the time of the fire raised the presumption that this premium had been paid, in the absence of evidence to the contrary, and the presumption was indulged "that the agent kept faith with his principal and sent to it the premium, less commissions and expenses." There is no room here for any such presumption. The possession of the policy did not raise the presumption that premiums falling due subsequent to its delivery had been paid, nor was there a showing that the insurer had authorized or ratified the payments not made with cash but with nuts.

The judgment must therefore be reversed, and, as the cause appears to have been fully developed, it will be dismissed. It is so ordered.