Naomi R. HANNA, Appellant,

v.

MT. VERNON LIFE INSURANCE COMPANY OF NEW YORK, Successor to Union Casualty and Life Insurance Company, Appellee.

No. 15943.

United States Court of Appeals
Eighth Circuit.

Oct. 30, 1958.

Rehearing Denied Nov. 28, 1958.

Joe B. Hurley and Bernard Whetstone, El Dorado, Ark., for appellant.

John M. Shackleford, Jr., El Dorado, Ark. (Shackleford & Shackleford, El Dorado, Ark., was with him on the brief), for appellee.

Before SANBORN, JOHNSEN, and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal by plaintiff, Naomi R. Hanna, from judgment dismissing her claim against the defendant, Mt. Vernon Life Insurance Company of New York, for benefits she claimed were due her as beneficiary of her deceased husband, Samuel Hanna, under group life and accident insurance policies issued by the defendant for the benefit of employees of the Earl Gibbon Petroleum Transport Company, hereinafter called Gibbon. It is undisputed that Samuel Hanna was an employee of Gibbon at the time of his death, and that there were then in existence defendant's group life and accident insurance policies affording Gibbon's covered employees $5,250 insurance for accidental death. Defendant's position is that plaintiff's husband was not covered by defendant's policies at the time of his death because of default in payment of premiums on behalf of Mr. Hanna. At the close of all of the evidence both parties moved for a directed verdict. Plaintiff's motion was overruled, defendant's motion was sustained, and plaintiff's action was dismissed. This appeal is from such judgment. Jurisdiction has been satisfactorily established.

Plaintiff's contention that the court erred in overruling her motion for a directed verdict is clearly without merit. The evidence does not conclusively establish that defendant's policies were in force as to Hanna at the time of his death.

Plaintiff's contention that the court erred in directing a verdict for the defendant presents a number of troublesome problems. Before considering the applicable law, we summarize the pertinent facts.

Hanna entered the employment of Gibbon as a truck driver on August 18, 1955. Gibbon had two plans of group insurance available to its employees. One

plan was that provided by the defendant company as part of a collective bargaining agreement between Gibbon and the Teamsters' Union. Under this plan Gibbon's employees were automatically covered by the group policies provided by the defendant after 30 days of employment. The premiums were to be paid by Gibbon. Gibbon paid defendant premiums in the amount of $33.75 for coverage of Hanna under this plan from September 19 to December 31, 1955.

The other available plan was provided by the Equitable Life Assurance Company with $4,000 coverage for accidental death. $4.63 of the monthly premium for this plan was paid by the employee, the balance being paid by Gibbon. On January 19, 1956, Hanna made written application for the Equitable plan, authorizing deduction from his salary of his share of the premium. Such application was accepted. All premiums attributable to Hanna under the Equitable plan were paid up to Hanna's death, and his beneficiary collected the $4,000 benefit due under the Equitable group policy.

Hanna, on March 17, 1956, joined the Teamsters' Union, and as part of such transaction he made application for the insurance provided by the defendant. Said application was left with the local union, which forwarded the application to the defendant. On July 7, 1956, Hanna received certificates from the defendant showing him to be insured under defendant's group insurance plan effective May 1, 1956. Hanna was accidentally killed on August 11, 1956. To avoid repetition, other pertinent facts will be related during the course of the opinion.

The trial court directed the verdict for the defendant on the basis that the evidence conclusively showed that Gibbon paid no premiums on behalf of Hanna to the defendant subsequent to December 31, 1955, and that defendant's group policy had lapsed as to Hanna for non-payment of premium prior to Hanna's death on August 11, 1956. Gibbon's bookkeepers testified that Hanna's name was not included in any of the required Report and Remittance Forms sent by Gibbon to the defendant subsequent to December 31, 1955. In a discussion between court and counsel at the trial, the evidence to the effect that Gibbon had paid no premiums on behalf of Hanna to the defendant subsequent to 1955 was treated as undisputed, and for that reason depositions of defendant's officials to the same effect were not introduced. The record fully supports the trial court's conclusion that Gibbon paid defendant no premiums on behalf of Hanna subsequent to December 31, 1955. The master group policy provides that the insurance on any employee shall automatically terminate, "(b) For non-payment of premiums by the Assured on behalf of an employee in which event such insurance shall automatically terminate at the end of the period for which premium has been paid."

■■ Under Arkansas law the group insurer has a right, in the absence of fraud or collusion with the employer, to rely upon the information it has received from the employer as to employees covered by the group insurance. Metropolitan Life Ins. Co. v. Thompson, 203 Ark. 1103, 160 S.W.2d 852. In the case just cited, the court quotes with approval from the A.L.R. Headnote to Magee v. Equitable Life Assurance Society, 62 N.D. 614, 244 N.W. 518, 85 A.L.R. 1457, as follows (160 S.W.2d at page 855):

"'Where such "terms and conditions" (in the group or master policy) require that the names of those insured in the group life insurance policy be certified to the assurance society by the employer, and premiums for such employee paid monthly, the failure to include such employee in the list insured and to pay premiums upon insurance for him precludes recovery against the assurance society upon the aforesaid certificate.'"

Thus, since Gibbon did not include Hanna as an insured in its reports, and did not pay the current premiums on his behalf, the defendant had a right to rely upon such information, and assume that Han-

na was no longer covered by its group policies.

We must now consider the effect of the certificates of insurance issued by the defendant. Plaintiff produced certificates stating that Hanna was insured under defendant's group life and accident insurance plans. Such certificates state they are effective May 1, 1956. They were delivered by the defendant to Hanna by mail on July 7, 1956. Plaintiff had been reinstated as a member of the union in March 1956, and at that time had applied for the defendant's group insurance. The applications for insurance were sent to the defendant by Teamsters' Union officials, and an inference can be drawn that the certificates were issued pursuant to such applications. No officer or employee of the defendant company testified as to the circumstances under which the certificates were issued. Johnson, the Teamsters official who sent in the applications, testified that he did not check the Report and Remittance Forms sufficiently, and that he sent in the applications by mistake. There is no evidence that Gibbon had anything to do with the processing or forwarding of the applications. The trial court found the certificates were issued by mistake and gave them no significance.

The certificates issued do not state that premiums had been paid, but state that Hanna is insured under the group policies. We are inclined to think that the issuance and delivery of the certificates could justify a permissible inference on the part of the fact finder that defendant's group policies were in effect as to Hanna when the certificates were issued, and that such possible inference has not been overcome as a matter of law. This raises the question of whether the inference is that the insurance was in force on the purported effective date of the certificates, May 1, 1956, or the date of delivery of the certificates, July 7, 1956. Since there is some merit to the contention that it is rather unnatural to deliver certificates of insurance after they have ceased to have any validity, we shall assume for the purpose of this case, without so deciding, that the plaintiff is entitled to the benefit of a permissible inference that defendant's group insurance was valid as to Hanna on July 7, 1956. In National Life & Accident Ins. Co. v. Ballentine, 190 Ark. 108, 77 S.W. 2d 799, 800, the court, during the course of its opinion, states:

"* * * The possession of the policy did not raise the presumption that premiums falling due subsequent to its delivery had been paid * * *."

Hanna died on August 11, 1956, 35 days after the delivery by the defendant of the certificates. The evidence, including the group policies, establishes that monthly payments of premiums are due on the first day of each month. We can find no basis for any inference that premiums were paid to the defendant on behalf of Hanna for any period subsequent to July 1956.

■■ Plaintiff insists that her husband's coverage was kept in force by the 31-day grace period provision in the policies. Under Arkansas law the grace period provided in group policies is personal to the employer. The employee is not a party to the insurance contract. The grace period does not extend to the employee. Neely v. Sun Life Assurance Co. of Canada, 203 Ark. 902, 159 S.W. 2d 722; Aetna Life Insurance Company v. Carroll, 188 Ark. 154, 65 S.W.2d 25. As heretofore stated, the group policies expressly provide that in event of nonpayment of premiums on behalf of an employee, the insurance shall automatically terminate as to such employee at the end of the period for which the premium has been paid. We believe that the record compels the conclusion that in any event the premiums due on Hanna's coverage on August 1, 1956, were not paid, and hence any coverage that Hanna might have had under defendant's group policies had terminated before his death.

We find nothing in the record to support any inference that Gibbon either agreed to, or actually did, make any premium payments on the defendant's cov-

erage at any time after the Equitable coverage was made available to Hanna at his request. The evidence is that Gibbon, at its employees' option, would furnish either the defendant's group insurance or contribute to the Equitable insurance, but would not provide both plans. Hanna did nothing to revoke his written request for Equitable insurance. The premiums due on the Equitable insurance were paid as due, and Hanna was advised of the continued deductions for his contribution by the payroll deduction information periodically supplied to him. As above noted, the plaintiff has collected the proceeds of the Equitable insurance. In any event, regardless of what Gibbon's obligation might have been to Hanna with reference to premium payments on defendant's policies, it is clear that Gibbon did not pay the defendant the premiums attributable to Hanna, and the reports made by Gibbon to defendant so show.

Plaintiff makes some claim that the $5 per month deducted upon Hanna's authorization from his wages for union dues was to pay his insurance premium for defendant's coverage. The hearsay testimony of plaintiff, received over appropriate objection, to the effect that the payment of the union dues was to take care of the premium cannot be considered substantial evidence to support such contention. The record discloses that plaintiff was testifying to information which she had received from her husband. Hanna's premium on the defendant's coverage amounted to $2.25 per week or about twice the amount paid monthly for union dues. There is no competent evidence which discloses any obligation on the part of the union to pay for the insurance premium. Under the master policy the obligation to remit the premiums was upon Gibbon. There is no evidence that the union or anyone else paid the defendant the premiums in dispute.

Plaintiff makes the further claim that her husband had a credit with the defendant, and the defendant was obligated to apply such credit upon premiums due. As heretofore stated, Gibbon paid the defendant the premiums for Hanna's coverage for a period expiring December 31, 1955, in the amount of $33.75. It is plaintiff's theory that Hanna was not a member of the union during this period, that the insurance provided by the defendant was available only for members of the union, and that consequently the premiums paid were not earned. The trial court rejected this contention, stating that he found nothing in the master policy limiting the group insurance provided by the defendant to union members. We are unable to find any such restriction. The testimony of Johnson, the secretary of the local union, is to the effect that the group insurance provided by the defendant was available to any employee of Gibbon whether or not he belonged to the union, and that non-union employees were insured by defendant's group policies. We agree with the trial court's conclusion that Hanna was insured by the defendant prior to December 31, 1955, and that the payments Gibbon made to the defendant were for premiums due and earned prior to December 31, 1955.

We conclude that the record contains no substantial evidence to support a finding that the premiums due defendant for Hanna's coverage to the date of his death on August 11, 1956, were paid by Gibbon, or that such premiums were paid by anyone else. The court committed no error in directing the verdict for the defendant.

Affirmed.