416 F.Supp.2d 711 (2006)
Alicia E. ERLITZ, Plaintiff,
v.
CRACKER BARREL OLD COUNTRY STORE, INC., as Plan Administrator, Cracker Barrel Old Country Store, Inc. Employee Term Life, Accidental Death and Dismemberment Benefit Plan (incorrectly named Employee *712 Term Life, Accidental Death and Dismemberment and Dependents Term Life Coverage for All Employees of CBRL Group, Inc. who are (1) Salaried Exempt Home Office and Field Employees, Managers or Officers; and (2) enrolled in the Health and Dental Plan offered by the Employer; other than employees classified by the Employer as Executives), and the Prudential Insurance Company of America, Defendants.
No. 4:03 CV 889 CAS.
United States District Court, E.D. Missouri, Eastern Division.
January 19, 2006.
*713 Robert D. Arb, Attorney at Law, Valley Park (St.Louis), Counsel for Plaintiff.
John F. Kuenstler, Barnes & Thornburg LLP, Chicago, IL, Counsel for Defendants Cracker Barrel Old Country Store, Inc. and Cracker Barrel Old Country Store Group Life Insurance Plan.
Daniel S. Tranen, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, Chicago, IL, Counsel for Defendant Prudential Insurance Company of America.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
SHAW, District Judge.
This matter is before the Court following a trial before the Court. Having considered the pleadings, trial testimony, and exhibits, the Court hereby makes and enters the following findings of fact and conclusions of law in accordance with Fed. R.Civ.P. 52.
Plaintiff Alicia Erlitz filed this lawsuit against Cracker Barrel Old Country Store, Inc. ("Cracker Barrel") and Cracker Barrel Old Country Store, Inc. Group Life Insurance Plan ("Plan")[1] and the Prudential Insurance Company of America ("Prudential") under the Employee Retirement Income and Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq.
Plaintiff is the daughter of Pete Erlitz, who is deceased. Erlitz was employed with Cracker Barrel for a little over two *714 years immediately preceding his death. Shortly after he began his employment, Erlitz enrolled in Cracker Barrel's "Group Basic Life and Health" benefit plan (the "Plan"), and designated Plaintiff as the beneficiary of his life insurance coverage. A few months before his death, Erlitz canceled his health insurance coverage.
In her three-count Fourth Amended Complaint, plaintiff alleges Cracker Barrel wrongfully denied her life insurance benefits after Erlitz's, death. Plaintiff alleges that Cracker Barrel breached a fiduciary duty to inform Erlitz that termination of health insurance coverage under the Plan terminated life insurance coverage under the Plan, and that he had a right upon termination of life insurance coverage to convert his group plan to an individual plan. Plaintiff also alleges that Prudential is jointly and severally liable with Cracker Barrel and the Plan as to these alleged life insurance benefits.
Defendants deny liability on all counts, asserting that termination of health insurance coverage under the Plan terminates life insurance coverage under the Plan. Defendants assert that Erlitz canceled his and Plaintiff's health and life insurance coverage in August 2002. Defendants also assert that between early August 2002 and his death in October 2002, Erlitz did not pay any premiums for supplemental life insurance coverage that he had previously paid by regular deductions from his paycheck. Defendants further assert that since no proof of loss was ever provided to Prudential, Plaintiff in any event has not met a requirement to receipt of life insurance benefits from Prudential.

FINDINGS OF FACT
1. Plaintiff Alicia E. Erlitz is the daughter of the late Pete R. Erlitz. (Tr. I at 103).
2. Cracker Barrel employed Erlitz as a manager trainee and then as an associate manager from on or about July 24, 2000 until Erlitz's death on October 8, 2002. (Tr. I at 53, 91, 132).
3. After his initial training, Erlitz worked as an associate manager at the Cracker Barrel located at Meramec Bottom Road and 1-55 in South St. Louis County, Missouri. (Tr. I at 53).
4. At all times during Erlitz's employment with Cracker Barrel, Cracker Barrel and the Plan required otherwise eligible employees to be enrolled in the health insurance program in order to be eligible for and maintain life insurance coverage. (Tr. II at 6-8, 50-51).
5. Further, both prior to and subsequent to Erlitz's employment with Cracker Barreland todayCracker Barrel and the Plan required and requires otherwise eligible employees to be enrolled in the health insurance program in order to be eligible for and maintain life insurance coverage. (Tr. II at 47-48).
6. On September 13, 2000, Erlitz applied for group health insurance for himself and his dependent daughter, Plaintiff. (Tr. II at 12-13; Pltfs. Trial Ex. 1)
7. Upon enrollment in the group health plan, Erlitz was automatically enrolled in the Basic Employee Term Life Insurance Plan (the "Plan"). (Tr. I at 134-35).
8. The Plan provided Erlitz with life insurance benefits in an amount two times his annual base salary. (Tr. I at 134-35).
9. On September 13, 2000, Erlitz also applied for Supplemental Employee Term Life Coverage, also referred to as Optional Life Insurance, with life insurance benefits in an additional amount of three times his annual base salary. (Tr. I at 135; Pltfs. Trial Ex. 2).
*715 10. The initial charge for this supplemental life insurance was $11.16 per week, or approximately $23.98 semimonthly, which was deducted from Erlitz's semimonthly paychecks until August 15, 2002. (Tr. I at 135; Tr. II at 84; Pltfs. Trial Ex. 1; Def. Prudential's Trial Ex. BB).
11. The Plan booklet for employee and dependent life insurance coverage issued by MetLife ("MetLife Booklet") identifies Cracker Barrel as the plan administrator and MetLife as the insurer. (Defs. Trial Ex. A).
12. The Plan booklet for employee and dependent life insurance coverage issued by the Prudential Insurance Company of America ("Prudential Booklet") identifies Cracker Barrel as the plan administrator and Prudential as the insurer. (Defs. Trial Ex. B (at CB00113-14))
13. At all relevant times until July 1, 2002, the MetLife Booklet governed life insurance coverage for employees of Cracker Barrel, including Erlitz. (Tr. I at 126-27).
14. As of July 1, 2002, the Prudential Booklet governed life insurance coverage for employees of Cracker Barrel, including Erlitz. (Tr. I at 127).
15. At all times since the inception of this action, Prudential has held the group basic and supplemental life insurance proceeds which Plaintiff seeks. (Tr. II at 8, 25-26, 79-80).
16. The MetLife Booklet and the Prudential Booklet both provide that only otherwise eligible employees enrolled in the health insurance program are eligible for life insurance coverage. (Tr. II at 6-8, 50-51; Defs. Trial Exhs. A-B).
17. The MetLife Booklet states, at page 37,
"WHEN BENEFITS END":
A. All of your benefits will end on the date:
1. your employment ends which is when you cease Active Work as an Employee; or
2. you are no longer a member of the Eligible Group; or
3. you are no longer covered in the Health Plan; or
4. your Eligible Group is no longer covered.
(Defs. Trial Ex. A).
18. The Prudential Booklet states, at page 7, under a header marked in boldface "FOR EMPLOYEE INSURANCE":
You are eligible for Employee Insurance while:
You are a full-time Employee of the Employer; and
 You are in a Covered Class; and
 You have completed the Employment Waiting Period, if any. You may need to work for the Employer for a continuous full-time period before you become eligible for the Coverage. The period must be agreed upon by the Employer and Prudential. Your Employer will inform you of any such Employment Waiting Period for your class.
(Defs. Trial Ex. B).
19. The Prudential Booklet states, at page 3, titled at the top "Schedule of Benefits": Covered Classes: The "Covered Classes" are these Employees of the Contract older and its Associated Companies: All Employees of CBRL Group, Inc. who are (1) Salaried Exempt Home Office and Field Employees, Managers or Officers; and (2) enrolled in the Health and Dental Plan offered by the Employer . . . (Defs. Trial Ex. B).
*716 20. The Prudential Booklet states, at page 29, titled at the top "When Your Insurance Ends":

EMPLOYEE AND DEPENDENTS INSURANCE
Your Employee Insurance under a Coverage or your Dependents Insurance under a Coverage will end when the first of these occurs:
 Your membership in the Covered Classes for the, insurance ends because your employment ends (see below) or for any other reason.
. . . . . .
(Defs. Trial Ex. B).
21. The Prudential Booklet states, at page 35:
Plan Name
Employee Term Life, Accidental Death and Dismemberment and Dependents Term Life Coverage for All Employees of CBRL Group, Inc. who are: (1) Salaried Exempt Home Office and Field Employees, Managers or Officers; and (2) enrolled in the Health and Dental Plan offered by the Employer, other than Employees classified by the Employer as Executives.
(Defs. Trial Ex. B).
22. The Prudential Booklet further states at page 36:
Loss of Benefits
You must continue to be a member of the class to which this plan pertains and continue to make any of the contributions agreed to when you enroll. Failure to do so may result in partial or total loss of benefits. . . .
(Defs. Trial Ex. B).
23. The Prudential Booklet also provides, at page 13, with respect to a participant's right to convert terminated group life insurance under the Plan to an individual life insurance contract, as follows:
D. CONVERSION PRIVILEGE
If you cease to be insured for the Employee Term Life Insurance of the Group Contract for one of the reasons stated below, you may convert all or part of your insurance under this Coverage, which then ends, to an individual life insurance contract. Evidence of insurability is not required. The reasons are:
(1) Your employment ends or you transfer out of a Covered Class.
. . . . . .
Any such conversion is subject to the rest of this section D.
Availability: You must apply for the individual contract and pay the first premium by the later of:
(1) the thirty-first day after you cease to be insured for the Employee Term Life Insurance; and
(2) the fifteenth day after you have been given written notice of the conversion privilege. But, in no event may you convert the insurance to an individual contract if you do not apply for the contract and pay the first premium prior to the ninety-second day after you cease to be insured for the Employee Term Life Insurance.
. . . . . .
(Defs. Trial Ex. B).
24. Erlitz received, per the ordinary course of Cracker Barrel's business, the MetLife Booklet upon his enrollment in the life insurance plan in 2000. During the time that the MetLife Booklet governed life insurance coverage for employees of Cracker Barrel, all employees received the MetLife Booklet upon their enrollment in the life insurance plan as a matter of course. (Tr. II at 9-10, 49-51).
*717 25. Between July, 2002 and October 8, 2002, the date on which Erlitz passed away, Cracker Barrel's employees were not mass-mailed or automatically sent the Prudential Booklet, but were mailed or sent the Prudential Booklet on request. (Tr. I at 134).
26. It is not known whether Erlitz requested a copy of the Prudential Booklet prior to his death. (Tr. I at 134).
27. Donna Cherry, who is Erlitz's exwife, executor, and Plaintiff's mother, testified that Erlitz's personal effects left for and given to Cherry after Erlitz's death may not have contained all of the effects given to Erlitz during his employment with Cracker Barrel. (Tr. I at 71-73, 85-86).
28. Immediately prior to his August 2, 2002 marriage to Rose Hinklin, Erlitz consulted with Alvin Jones, Human Resources Manager for the P.D. George Company, which employed Rose Hinklin Erlitz, regarding whether the health benefits available under the P.D. George Company health plan were preferable to his existing health benefits. (Tr. I at 89, 123).
29. Based on his conversation with Jones, Erlitz decided to cancel his health insurance with Cracker Barrel. (Tr. I at 124).
30. On or about August 1, 2002, Erlitz sent a form entitled "Group Basic Life and Health Applications for Cracker Barrel Old Country Store, Inc. and Participating Subsidiaries" to Cracker Barrel's Benefits Department in Lebanon, Tennessee. (Defs. Trial Ex. I).
31. The box entitled "Request for Change" was marked. (Defs. Trial Ex. I).
32. The box entitled "Cancel Family Coverage" was marked. (Defs. Trial Ex. I).
33. At the same time, Erlitz sent to the Benefits Department, with the form entitied "Group Basic Life and Health Applications for Cracker Barrel Old Country Store, Inc. and Participating Subsidiaries" (the "Request for Change" form), a handwritten post-it note dated 8/1/02 which read as follows: "Please cancel by (sic) Medical and Health coverage for my daughter and I as we are being covered by my wife's company plan on August 2, 2002 when we got married. Thanks." (Defs. Trial Ex. J).
34. In the August 2002 Request for Change form, Erlitz listed no one in the box entitled "For Life Insurance Coverage: Please Indicate Beneficiary" but rather left that section of the form blank. (Tr. II at 20; Defs. Trial Ex. I).
35. In his September 2000 insurance application form, however, Erlitz had listed Plaintiff's name in the box entitled "For Life Insurance Coverage: Please Indicate Beneficiary." (Tr. II at 19-20; Pltfs. Trial Eh. 1).
36. Following Erlitz's submission of the Request for Change form to the Benefits Department, Erlitz contacted Progressive Insurance Company to inquire about obtaining life insurance coverage. (Tr. I at 99; Defs. Trial Ex. C (at entry for August 6, 2002)).
37. On August 8, 2002, Michelle Anderson, Benefits Coordinator for Cracker Barrel, in response to Erlitz's Request for Change form, entered the cancellation of Erlitz's health and life insurance into Cracker Barrel's employee database, effective August 6, 2002. (Tr. II at 39-41, 47).
38. Anderson did not find Erlitz's Request for Change form unclear or confusing in any way. (Tr. II at 54).
39. Anderson had no questions or concerns about anything after reviewing Erlitz's Request for Change form. (Tr. II at 55).
*718 40. It is not unusual for Cracker Barrel employees to cancel their insurance coverage by completing a Request for Change form. (Tr. II at 54).
41. When Cracker Barrel employees cancel their insurance coverage by completing a Request for Change form, their Request for Change forms typically are not different in any meaningful way than Erlitz's Request for Change form. (Tr. II at 55).
42. There was' nothing about Erlitz's Request for Change form that was outside the parameters of the health insurance program or life insurance program. (Tr. II at 55).
43. Anderson did not speak with Erlitz about the Request for Change form or cancellation of Erlitz's health and life insurance because she had no reason to. Anderson found the form clear and complete, and entered the cancellation in accord with Erlitz's request. (Tr. II at 55; Tr. I at 140).
44. Anderson did not ask Erlitz whether he intended to cancel both his health and life insurance because canceling the former and retaining the latter is not possible and is not an option under the Plan. (Tr. II at 56; Tr. I at 140-41).
45. Anderson did not tell Erlitz that he had a right to convert his group life insurance contract to an individual life insurance contract because she had no reason to. The Plan documents explain the right to and procedure for so converting the contract. (Tr. II at 56).
46. Because enrollment in the life insurance program is contingent upon enrollment in the health insurance program, and no Plan participant may have life insurance coverage without having health insurance coverage, Erlitz canceled his health and life insurance coverage in August 2002. (Tr. II at 19, 47).
47. Plaintiff is unaware of any Cracker Barrel employee who was able to cancel his health insurance but keep his life insurance. (Tr. I at 114-15).
48. Plaintiff is unaware of any Cracker Barrel employee who was treated differently than Cracker Barrel treated Erlitz. (Tr. I at 115).
49. During the time that Erlitz had health and life insurance coverage his contributions for his premium for that coverage were made in itemized fashion from each of his paychecks. (Tr. II at 83-84).
50. Erlitz contacted Cracker Barrel's home office in mid-August 2002 because, although he had canceled his health and life insurance coverage, Cracker Barrel's payroll department mistakenly made deductions for Erlitz's contributions to his health and life insurance coverageincluding the separate itemized deduction for Erlitz's contribution to his supplemental life insurance coveragefrom Erlitz's immediately following paycheck. (Tr. II at 82).
51. Specifically, Erlitz contacted and spoke with Anderson regarding a reimbursement for the deductions made for Erlitz's contributions to his health and life insurance coverageincluding reimbursement for the separate itemized deduction for Erlitz's contribution to his supplemental life insurance coveragefrom Erlitz's August 15, 2002 paycheck. (Tr. II at 82).
52. When he spoke with Anderson, Erlitz did not say anything about his not having wanted his life insurance canceled or anything about the fact that both his health insurance and life insurance had been canceled. (Tr. II at 82-83).
53. Anderson informed senior payroll coordinator Debbie Brewington (misnamed "Burlington") in Erlitz's handwritten postit note, see 1164, infra, of Erlitz's requested *719 reimbursement, and Cracker Barrel reimbursed Erlitz for the deductions in his next paycheck. (Tr. II at 86-87, 90; Defs. Trial Exs. D and F (at CB00068)).
54. Cracker Barrel made no deductions for life or health insurance benefits from Erlitz's paychecks between August 31, 2002 and Erlitz's death on October 8, 2002including the separate itemized deduction for Erlitz's contributions to his supplemental life insurance coverage. (Tr. II at 89-93; Defs., Trial Ex. F (at CB00068); Def. Prudential's Trial Exs. DD, FF, GG).
55. Accordingly, Erlitz paid no premiums for any life insurance benefits between August 31, 2002 and his death on October 8, 2002. (Tr. II at 89-93; Defs. Trial Ex. F (at CB00068); Def. Prudential's Trial Exs. DD, FF, GG).
56. The Plan provided and required that Plan participants must pay any coverage premiums in order to receive coverage. (Tr. II at 50-51; Defs. Trial Ex. B) (at CB00107, 114).
57. As a result of Erlitz's submission of his Request for Change form to Cracker Barrel, Prudential did not receive any subsequent payment of premium for life insurance on behalf of Erlitz. (Tr. II at 90-93; Defs. Trial Ex. F (at CB00068); Def. Prudential's Trial Exs. DD, FF, GG).
58. Erlitz never subsequently complained to or informed Anderson that Cracker Barrel had made some mistake in no longer deducting from Erlitz's paychecks what it had formerly deducted for his contributions to his life insurance coverage. (Tr. II at 87-88).
59. Erlitz never subsequently told Anderson that he had not wanted his life insurance canceled or asked Anderson why both his health insurance and life insurance had been canceled. (Tr. II at 87).
60. In August 2002, Erlitz maintained a personal daily calendar in which Plaintiff testified Erlitz would make plans and "todo lists." (Tr. I at 97, 110; Defs. Trial Ex. C).
61. Erlitz's calendar for August 16, 2002 contained the following notation in Erlitz's handwriting: August 16"Call MetLife RE: dental billDone Call Payroll RE: W2 and Insurance cancellationsLM Friday 2:15" (Tr. I at 111; Defs. Trial Ex. C).
62. Erlitz's calendar for August 20, 2002 contained the following notation in Erlitz's handwriting:
"P/U photosDone

Call Debbie in payroll RE: W2 and CX medical/life insuranceDone

7:45 Mgr. Mtg @ Holiday Inn Express behind # 150 in FentonDone"
(Tr. I at 112; Defs. Trial Ex. C).
63. Plaintiff understands the notation "CX" to mean "cancel." (Tr. I at 112-13).
64. Erlitz's calendar contains a post-it note on the calendar page for the dates August 29 through September 1, 2002 as follows: "x. 2331 Debbie Burlington RE: $58.50 Reimbursement for ex life/med insurance Call if not on next check" (Tr. I at 114; Defs. Trial Ex. C).
65. Cracker Barrel's Benefits Director, John Rains, and its Benefits Coordinator, Michelle Anderson, were at all relevant times themselves participants in the same life insurance program and health insurance program in which Erlitz was for a time a participant. (Tr. II at 5, 37-38, 48).
66. Rains and Anderson understand the Plan language contained within the MetLife Booklet and Prudential Booklet and regard the MetLife Booklet and Prudential Booklet as clear in apprising them as Plan participants that in order to have life insurance coverage, a Plan participant *720 must be enrolled in health insurance coverage. (Tr. II at 11, 13-15, 53).
67. At all relevant times, if a participant in Cracker Barrel's health insurance plan canceled his health coverage but then changed his mind, he could within a thirty-day period have re-enrolled in the health insurance planand with it the life insurance planretroactive to the initial cancellation date, without any loss of coverage. (Tr. II at 23).
68. Erlitz, like other participants, could have done this had he wished. (Tr. II at 23). Erlitz did not do so. (Tr. II at 32).
69. Anderson at no time had any reason to believe that Erlitz did not intend to cancel both his health and life insurance coverage. (Tr. II at 56).
70. Anderson at no time had any reason to believe that Erlitz may not have known that canceling health insurance coverage automatically canceled life insurance coverage. (Tr. II at 56-57).
71. During Erlitz's employment with Cracker Barrel, neither John Rains nor Michelle Anderson, both of whom at all relevant times have worked at Cracker Barrel's Benefits Department in Lebanon, Tennessee, had any knowledge of Erlitz's health or personal circumstances. (Tr. II at 3, 5-6, 39, 47, 57, 75-76).
72. Rains never met Erlitz and never spoke with Erlitz. (Tr. II at 5-6). The first time Rains ever learned or heard of Erlitz was in November 2002, after Erlitz had passed away. (Tr. II at 75-76).
73. Prior to speaking with Erlitz in August 2002 about his request for reimbursement for the deductions mistakenly made from Erlitz's paycheck for Erlitz's contributions to his health and life insurance coverage, after Erlitz had canceled his health and life insurance coverage, Anderson had never had any contact with Erlitz and did not know anything about him. (Tr. II at 47, 57).
74. Cracker Barrel has approximately 500 stores, with approximately five managers and generally 100 to 150 hourly employees at each store at any given time. (Tr. II at 57). Overall, Cracker Barrel has approximately 65,000 to 70,000 employees. (Tr. II at 6).
75. Approximately 13,000 of Cracker Barrel's employees participate in its health insurance program. (Tr. II at 6).
76. On November 11, 2002, Cracker Barrel transmitted to Plaintiffs counsel, pursuant to Plaintiffs counsel's November 4, 2002 request, a letter stating in part that "enrollment in the health plan is required in order to have coverage under the life insurance program," and enclosing a copy of the Prudential Booklet and the Flex Plus enrollment booklet for 2000. The Prudential Booklet expressly delineated Cracker Barrel's eligibility requirements and Prudential's claim rules, claim procedure, and three-tier appeal process. (Defs. Trial Exs. B (at CB00084, 106, 114-17), G, N; Tr. II at 75-78).
79. Although Anderson spoke with Plaintiffs mother, Donna Cherry, on one occasion after Erlitz's death, Anderson never had any conversation with Cherry in which Cherry mentioned to Anderson anything about Erlitz's Request for Change form, or regarding the handwritten post-it note attached to or provided with the Request for Change form. (Tr. II at 45, 60-61).
80. Following Erlitz's divorce from Plaintiffs mother, Cherry, Erlitz and Cherry entered into a divorce decree. (Tr. I at 85; Pltfs. Trial Ex. 25).
81. The divorce decree listed by name and policy number two life insurance policies that Erlitz was required to keep in *721 effect for Plaintiffs benefit. (Tr. I at 85; Pltfs. Trial Ex. 25 (at ¶¶ 18-19)).
82. Cherry assumes that those two policies were canceled. (Tr. I at 85).

CONCLUSIONS OF LAW
In count I, plaintiff alleges Cracker Barrel wrongfully denied her life insurance benefits after Erlitz's death. To recover benefits under the terms of an ERISA plan pursuant to 29 U.S.C. § 1132(a)(1)(B), plaintiff bears the burden of proving entitlement to contractual benefits. E.g., Farley v. Benefit Trust Life Ins. Co., 979 F.2d 653, 658 (8th Cir.1992).
This Court concludes plaintiff has not met her burden of proving entitlement to contractual benefits. ERISA requires that employee benefit plan documentation include a summarized description written in a manner calculated to be understood by the average plan participant, and that plan documentation be sufficiently accurate and comprehensive to reasonably apprise participants and beneficiaries of rights and obligations under the plan. 29 U.S.C. §§ 1021, 1022; Lee v. Union Electric Co., 606 F.Supp. 316 (E.D.Mo.1985), aff'd, 789 F.2d 1303 (8th Cir.1986).
Where the plan documentation makes participant and beneficiary rights and obligations clear, a plaintiffs claim for recovery of benefits inconsistent with the plan documentation necessarily fails. E.g., Fink v. Union Central Life Ins. Co., 94 F.3d 489, 491 (8th Cir.1996) (plaintiff not entitled to recover benefits provided under plan to "active," "full-time" employees where definitions of those terms were clear in plan documentation and record demonstrated that decedent was neither "active" nor "full-time" at the time of his death); Maxa v. John Alden Life Ins. Co., 972 F.2d 980, 984-85 (8th Cir.1992) (plaintiff not entitled to recover benefits provided under plan where documentation, "while arguably not as clear as it could have been with regard to whether application for Medicare was absolutely necessary to assure total coverage, enabled a reasonable participant to conclude that he or she might have to enroll in Medicare in order to avoid a reduction of overall benefits . . ."); Stahl v. Tony's Building Materials, Inc., 875 F.2d 1404, 1408 (9th Cir.1989) (plaintiff not entitled to recover benefits provided under plan where documentation explained "in perfectly understandable terms" that the cessation of employer contributions triggered loss of past service credits; ERISA does not require documentation to address or discuss a particular beneficiary's precise situation). The Plan documentation in this case makes participant and beneficiary rights and obligations clear. The Court concludes that plaintiffs claim for recovery of benefits is inconsistent with the Plan documentation, and accordingly fails.
The Plan documentation here states that only otherwise eligible employees enrolled in the health insurance program are eligible for life insurance coverage. Enrollment in the Plan's life insurance program is contingent upon enrollment in the Plan's health insurance program. No Plan participant may have life insurance coverage without having health insurance coverage. Employees not enrolled for health insurance coverage are not members of the "covered class" of employees who may be enrolled for life insurance coverage.
The Court concludes that when Erlitz canceled his health coverage under the Planregardless of his intenthe ceased to be a member of the "covered class" of employees eligible for life coverage, and thus canceled his life coverage as well. In addition, when Erlitz stopped paying his premium contributions for his life insurance coverage, he was no longer entitled to *722 receive the benefits of such life insurance coverage.
Moreover, although Eighth Circuit law and the fact that the Plan documentation in this case makes participant and beneficiary rights and obligations clear render Erlitz's individual understanding or intent immaterial, the record evidence, including Erlitz's handwritten notes addressing the cancellation of both his health and life insurance coverage, as well as Erlitz's knowledge and insistence that his premium contributions for his health and life insurance coverage were after his August 15, 2002 paycheck no longer made, seems to demonstrate that Erlitz understood that no Plan participant may have life insurance coverage without having health insurance coverage. Accordingly, judgment for Cracker Barrel and the Plan on Count I will be granted.
In count II, plaintiff alleges that Cracker Barrel breached a fiduciary duty to inform Erlitz that termination of his health insurance coverage under the Plan terminated life insurance coverage under the Plan, and that he had a right upon termination of life insurance coverage to convert his group plan to an individual plan. Under ERISA, a claim may be asserted under 29 U.S.C. § 1109, in conjunction with 29 U.S.C. § 1132(a)(2), only to obtain relief for an employee benefit plan as a whole and all plan beneficiaries as a group, and not to obtain individual relief for particular participants or beneficiaries. See, e.g., Massachusetts Mutual Life Ins. Co., et al. v. Russell, 473 U.S. 134, 145, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) (section 1109(a) provides relief only to a plan and not to individual beneficiaries); Conley v. Pitney Bowes, 176 F.3d 1044, 1047 (8th Cir.1999) (same). As plaintiff alleges a breach of fiduciary duty not on behalf of the Plan, but on her own behalf, her breach of fiduciary duty claim accordingly fails as a matter of law. Judgment for Cracker Barrel on Count II is therefore appropriate.
Alternatively, Plaintiff's breach of fiduciary duty claim is without merit. An ERISA fiduciary satisfies its duty to inform where its employee benefit plan documentation itself informs participants and beneficiaries of their rights and obligations. E.g., Ince v. Aetna Health Mgmt., Inc., 173 F.3d 672, 676 (8th Cir. 1999) (plaintiff's breach of fiduciary duty claim failed where summary plan description plainly and accurately set forth a method of calculating and asserting subrogation claims of which plaintiff claimed she was not specifically informed); Allen v. Atlantic Richfield Retirement Plan, 480 F.Supp. 848, 851-52 (E.D.Pa.1979), aff'd, 633 F.2d 209 (3rd Cir.1980) (plaintiff's breach of fiduciary duty claim failed where plan "booklet by itself adequately explained the waiting period" of which plaintiff claimed decedent was not specifically informed, given that "Congress did not intend to impose a duty to provide the kind of individualized attention urged by plaintiff here, but rather envisioned that a fiduciary could discharge its obligations through the use of an explanatory booklet").
An ERISA fiduciary is not obliged to individually notify plan participants or beneficiaries of the specific impact of a plan's terms on them based on their personal circumstances. See e.g., Maxa, 972 F.2d at 985-86 ("[t]he great majority of courts [ ] have not imposed upon an ERISA plan fiduciary the duty individually to notify participants . . . of the specific impact of the general terms of the plan upon them," and finding no fiduciary duty "individually to warn, upon their sixty-fifth birthdays, each and all of the members of the plans . . . that their benefits would be reduced according to the *723 plan's coordination of benefits provision unless they enrolled in Medicare"); Kerns v. Benefit Trust Life Ins. Co., 790 F.Supp. 1456, 1461-62 (E.D.Mo.1992) (finding no fiduciary duty to notify plan beneficiary that plan participant had failed to pay premiums required for coverage under plan's life insurance program); Howard v. Gleason Corp., 901 F.2d 1154, 1160 (2d Cir.1990) (finding no breach of fiduciary duty to inform plaintiff of life insurance conversion privilege where decedent received notice of conversion privilege when he received ERISA plan documentation clearly setting it out; plan fiduciary had no obligation to personally notify decedent). Moreover, Plaintiff presented no evidence that Cracker Barrel's Benefits Department was aware of Erlitz's or Plaintiffs personal circumstances. The only evidence presented at trial showed that it was not. Cracker Barrel breached no fiduciary duty to Erlitz or Plaintiff because it adequately informed them through the Plan documentation that termination of health insurance coverage terminated life insurance coverage under the Plan, and that Erlitz had a right upon the termination of life insurance coverage to convert his group plan to an individual plan. ERISA requires no more. On this basis, judgment for Cracker Barrel on Count II of Plaintiffs Fourth Amended Complaint is appropriate.
In count III, plaintiff alleges that Prudential is jointly and severally liable with Cracker Barrel and the Plan as to the alleged life insurance benefits. The Court concludes judgment for Prudential on Count III will be granted because Prudential did not receive premium payments on behalf of Erlitz after August 2002. See Farley v. Benefit Trust Life Ins. Co., 979 F.2d 653, 658 (8th Cir.1992) (to recover benefits under the terms of the plan, plaintiff bears the burden of proving entitlement to contractual benefits); Hampton v. Metropolitan Ins. Co., 528 S.W.2d 17 (Mo. App.1975) (nonpayment of premiums terminates individual coverage under a group policy); D & P Terminal, Inc. v. Western Life Ins. Co., 368 F.2d 743, 748 (8th Cir. 1966) (it is reasonable to charge an insured with the knowledge that his failure to pay premiums toward a life insurance policy will lapse the policy); Hyten v. Cape Mut. Ins. Co., 663 S.W.2d 430 (Mo.App.1983) ("Continued payment of premiums by an insured on or before their due date is necessary to continue the policy in force, and the duty of the insurance company to pay benefits under the policy depends upon whether the premiums were paid when due."); Robertson v. Reliable Life Ins. Co., 570 S.W.2d 787 (Mo.App.1978) ("It is a fundamental tenet that where premiums are not paid as required under the insurance contract, there is no insurance coverage for the insured.").
In Hanna v. Mt. Vernon Life Insurance Co. of New York, 260 F.2d 244 (8th Cir. 1958), the Eighth Circuit affirmed the directed verdict for the group life insurer, finding that there was no evidence that premiums were paid to the group life insurer on behalf of the employee in question. In Hanna, the insured's employer made two group life insurance plans available to its employees. Id. at 245. One plan was provided by defendant, the other plan was provided by Equitable Life Assurance Company ("Equitable"). Id. At the employee's option, the employer would either pay the full monthly premiums under defendant's plan or contribute to the premiums under the Equitable plan. Id. at 248. The employer paid premiums on behalf of the insured to the defendant from September 19, 1955 to December 31, 1955. Id. at 246. On January 19, 1956, the insured applied for coverage under the Equitable plan and authorized deductions from his salary for his share of the premium. Id. The premiums due under the Equitable *724 plan were paid as due until his death. Id. Upon the insured's death in August 1956, the plaintiff submitted claims to Equitable and defendant. Id. at 245-46. Plaintiff collected benefits from Equitable; however, defendant denied plaintiff's claim due to the fact that it had not been paid premiums after December 31, 1955. Id. The Court granted defendant's motion for a directed verdict on the basis that there was no evidence that the employer paid premiums on behalf of the insured to defendant after December 31, 1955, and as a result, defendant's group policy had lapsed as to the insured. Id. at 245-46.
The Eighth Circuit affirmed, holding that the plan would terminate as to any employee for whom no premium payments were made. Id. at 246. It noted that plaintiff had not established that subsequent to December 31, 1995, the employer paid premiums to defendant on behalf of the insured. Id. The Court also determined that regardless of what the employer's obligation might have been to the insuredwhether the employer actually agreed to make premium payments to defendant even after the insured was covered under the Equitable planthe fact remained that neither the employer, nor anyone else, paid defendant the premiums attributable to the insured. Id.
Likewise, the Plan documents here provide that a participant's failure to make contributions will result in the loss of benefits. The evidence presented at trial demonstrate that no premium was paid to Prudential by Erlitz or on behalf of Erlitz after August 2002. Erlitz requested that Cracker Barrel reimburse him for all deductions made from his paycheck after he cancelled his policy, which Cracker Barrel did. As indicated by Erlitz's pay stubs, Cracker Barrel made no deductions for life and health insurance benefits from Erlitz's paycheck after August 2002. Since no premium was paid to Prudential after August 2002, judgment for Prudential on Count III will be entered.
Judgment for Prudential on Count III should also be entered because the Plan documentation provides that only employees enrolled in the health insurance program are eligible for life insurance coverage. See Fink v. Union Central Life Ins. Co., 94 F.3d 489, 491 (8th Cir.1996); Maxa v. John Alden Life Ins. Co., 972 F.2d 980 (8th Cir.1992). The Booklet provides that all determinations of coverage under the Group Contract are vested in Prudential; thus, Prudential's determinations must be upheld unless they are arbitrary and capricious. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); Collins v. Central States, S.E. & S.W. Areas Health & Welfare Fund, 18 F.3d 556 (8th Cir.1994); Finley v. Special Agents Mutual Benefit Ass'n, Inc., 957 F.2d 617, 619 (8th Cir. 1992).
A decision supported by a reasonable explanation will not be disturbed even if another reasonable interpretation could be made or if the court might have reached a different result had it decided the matter. Phillips-Foster v. UNUM Life Ins. Co. of Am., 302 F.3d 785, 795 (8th Cir.2002). The Booklet in this case provides that in order to be within the "Covered Class" of employees eligible for life insurance coverage, employees must be enrolled in the health insurance plan. When Erlitz canceled his health coverage, he ceased to be a member under the "Covered Class" of employees eligible for life insurance coverage. Moreover, pursuant to Maxa, even if the definition of "Covered Class" is not as clear as it could be, it still enabled Erlitz to conclude that he "might" have to maintain his enrollment in the health insurance program if he wished to maintain his group life insurance coverage. *725 Judgment for Prudential on Count III of Plaintiff's Fourth Amended Complaint should be entered because a determination that Erlitz cancelled his life insurance coverage when he cancelled health insurance would be reasonable.
For all of the foregoing reasons, the Court will enter judgment for defendants and against plaintiff.
IT IS HEREBY ORDERED that Cracker Barrel's motion for leave to file proposed findings of fact and conclusions of law in excess of the page limitation is GRANTED. (Doc. 182.)
NOTES
[1] The Plan's correct legal name is Cracker Barrel Old Country Store, Inc. Group Life Insurance Plannot "Cracker Barrel Old country Store, Inc. Employee Term Life, Accidental Death and Dismemberment Benefit Plan" as set forth in Plaintiff's Fourth Amended Complaint.